# In re R-D-, Respondent

*Decided July 3, 2007*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) An alien who leaves the United States and is admitted to Canada to seek refugee status has made a departure from the United States.

(2) An alien returning to the United States after the denial of an application for refugee status in Canada is seeking admission into the United States and is therefore an arriving alien under 8 C.F.R. § 1001.1(q) (2007).

FOR RESPONDENT: Michele Henriques, Esquire, Buffalo, New York

FOR THE DEPARTMENT OF HOMELAND SECURITY: James W. Grable, Chief Counsel

BEFORE: Board Panel: FILPPU and PAULEY, Board Members. Dissenting Opinion: COLE, Board Member.

PAULEY, Board Member:

In a decision dated August 5, 2004, an Immigration Judge terminated these removal proceedings and certified his decision, which the Department of Homeland Security ("DHS") also appealed. In an order dated December 21, 2004, we sustained the DHS's appeal, vacated the Immigration Judge's decision, and remanded the record for further proceedings. The case is before us again on certification by the Immigration Judge of a second decision dated October 28, 2005. Both the respondent and DHS have also filed timely appeals, although the DHS has withdrawn its appeal. The decision of the Immigration Judge will be affirmed, and the respondent's appeal will be dismissed in part.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of Guinea who was admitted to the United States on or about November 21, 1998, as a nonimmigrant visitor with authorization to remain in the United States for a period not to exceed March 5, 1999. On January 25, 1999, the respondent traveled to Canada to

seek refugee status. She was returned to the United States by Canadian officials pursuant to the Reciprocal Agreement on July 13, 2000.[1] United States immigration officials then granted the respondent voluntary departure until November 13, 2000. On April 30, 2001, the respondent again traveled to Canada to pursue an application for refugee status. While in Canada, the respondent resided with her husband, who is a Canadian citizen. Canadian officials subsequently denied her refugee application and returned her to the United States on July 8, 2004. The DHS then issued the respondent a Notice to Appear (Form I-862), charging that she is removable under section 237(a)(1)(B) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(1)(B) (2000), as an alien who is in the United States in violation of law.

In his August 3, 2004, decision, the Immigration Judge found that the respondent was not removable and terminated the proceedings. The Immigration Judge certified his decision to the Board. The DHS filed a response to the Immigration Judge's certification, as well as a timely Notice of Appeal from a Decision of an Immigration Judge (Form EOIR-26). We sustained the DHS's appeal and remanded the record for further proceedings. The Immigration Judge issued another decision, which he has also certified, requesting that we reconsider our previous opinion. Both parties have appealed, but the DHS has withdrawn its appeal.

## II. ISSUES

The principal issue before us is whether the Immigration Judge correctly determined that the respondent had departed the United States and was therefore an arriving alien, who is not subject to removability under section 237(a)(1)(B) of the Act. If the Immigration Judge erred in finding the respondent to be an arriving alien, the second issue is whether he properly found that the respondent had not been paroled into the United States upon her return to the United States from Canada.

---

[1] On July 24, 1987, immigration officials of Canada and the United States signed the Reciprocal Arrangement between the United States Immigration and Naturalization Service and the Canada Employment and Immigration Commission for the exchange of deportees between the United States and Canada. It is currently referred to as the Reciprocal Agreement and is contained in the Appendix to Operations Instructions 243.1(c)(2). *See* 16 Charles Gordon et al., *Immigration Law and Procedure* 809-17, App. 243.1(c)(2) (rev. ed. 1993).

## III. ANALYSIS

### A. Departure from the United States

The Immigration Judge found that when the respondent left the United States and went to Canada to apply for refugee status, she made departures from the United States. As a consequence, the Immigration Judge determined that upon the respondent's return to the United States by Canadian officials, she was an arriving alien, rather than an alien subject to removal under section 237(a)(1)(B) of the Act. Specifically, the Immigration Judge determined that *Matter of T-*, 6 I&N Dec. 638 (BIA 1955), is inapplicable to the respondent's case.[2] We agree.

In *Matter of T-*, *supra*, a lawful permanent resident alien boarded a vessel and traveled to Europe. Upon his arrival in Europe, he was detained on the vessel because he lacked any documentation. The alien was then returned to the United States after being refused entry to any other country. We held that he was not seeking entry to the United States because he had been refused entry at the foreign ports, was confined on the ship, and was returned to this country. *Id.* at 640.

We find that *Matter of T-*, *supra*, is clearly distinguishable from this case. The respondent, who is not a lawful permanent resident, is in a situation different from that of the alien in that case. She was given permission to go into Canada to apply for refugee status, was never detained, and remained there for several years, during which time she was free to move about the country. Under these circumstances, we find no error in the Immigration Judge's conclusion that the respondent made a departure when she left the United States. *See* 8 C.F.R. § 215.1(h) (2007) ("The term *depart from the United States* means depart by land, water, or air: (1) From the United States for any foreign place . . . .").

The Immigration Judge also considered the Reciprocal Agreement and the Agreement Between the Government of the United States of America and the Government of Canada for Cooperation in the Examination of Refugee Status Claims from Nationals of Third Countries ("Safe Third Country Agreement").[3] He concluded that neither agreement altered, amended, or

---

[2] Although the DHS has withdrawn its appeal, we note that throughout the removal proceedings and in its first appeal the DHS argued that *Matter of T-*, *supra*, was controlling in this case.

[3] The Safe Third Country Agreement, which was signed on December 5, 2002, is available at http://ottawa.usembassy.gov/content/can_usa/safethirdfinal_agreement.pdf and http://www.uscis.gov/files/article/appendix-c.pdf.

preempted the statutes or regulations that determine the status to be accorded to an alien seeking admission to the United States at a port-of-entry. We agree.

The Reciprocal Agreement does not identify or mandate the status of an alien deported from one country to the other pursuant to that agreement. Rather, it merely establishes a process for the orderly and expeditious return of deportees between the United States and Canada. Likewise, neither the Safe Third Country Agreement itself nor the final regulations implementing it specifically address the status to be accorded to an alien returned by Canada to the United States after an unsuccessful attempt by the alien to seek refugee status in Canada. *See* Implementation of the Agreement Between the Government of the United States of America and the Government of Canada Regarding Asylum Claims Made in Transit and at Land Border Ports-of-Entry, 69 Fed. Reg. 69,480 (Nov. 29, 2004); Asylum Claims Made by Aliens Arriving From Canada at Land Border Ports-of-Entry, 69 Fed. Reg. 69,490 (Nov. 29, 2004).

The status of an alien returned to the United States from Canada is only discussed in the Supplementary Information accompanying the DHS's regulations regarding the implementation of the Safe Third Country Agreement, which states the following:

> The Department declines to codify the process affecting those returned to the United States under the Agreement, because existing regulations already govern how they will be treated by DHS. For purposes of U.S. immigration law, these returnees will be in the same position they would be in had they not left the United States.

69 Fed. Reg. at 69,484 (Supplementary Information). While DHS officials have cited to *Matter of T-*, *supra*, as the basis for their comments in the Supplementary Information, their reliance on that case is erroneous. Specifically, the DHS fails to distinguish between the facts in *Matter of T-* and the situation of an alien who travels to Canada, is allowed into that country to seek refugee status, resides there for a period of time, frequently encompassing several years, receives benefits from the Government of Canada, and only later is informed by Canadian officials that his or her application for refugee status is denied.[4] Thus, the final regulations

---

[4] We note that the DHS's briefs assert that while the aliens are in Canadian territory, they have not actually been admitted, but instead have a status tantamount to "parole" under United States immigration law. However, the DHS failed to establish the status of an alien who has been allowed into Canada to seek refugee status. *See Matter of Soleimani*, 20 I&N Dec. 99 (BIA 1989) (stating that a party relying on foreign law must plead it and prove it).

implementing the Safe Third Country Agreement do not mandate the status of an alien returned to the United States. Moreover, the Supplementary Information to the DHS's regulations is not binding, and in this case it relies on the mistaken application of *Matter of T-*, *supra*. Accordingly, we concur with the Immigration Judge's conclusion that neither the Reciprocal Agreement nor the Safe Third Country Agreement mandates the status to be accorded to an alien being returned to the United States from Canada.

The Immigration Judge also determined that the DHS's reliance on an Immigration and Naturalization Service memorandum was misplaced and did not support its position that aliens seeking refugee status in Canada have not made a departure from the United States. *See* Memorandum from James A. Puleo, Acting Associate Commissioner, Office of Operations, to Dwayne E. Peterson, Staff Assistant for Field Operations, Southern Regional Office (Nov. 15, 1993), *reprinted in* 70 Interpreter Releases, No. 48, Dec. 20, 1993, app. II at 1690. We agree with this conclusion as well. The memorandum does not address either the Reciprocal Agreement or the Safe Third Country Agreement. It discusses only whether an alien who has been granted advance parole but is not admitted to Mexico is subject to inspection upon return. Thus, the facts described in the memorandum are distinguishable from those of the case before us, where the alien was allowed into Canada to pursue an application for refugee status.

Finally, the Immigration Judge determined that because the respondent had departed the United States, and neither *Matter of T-*, *supra*, the Reciprocal Agreement, the Safe Third Country Agreement, nor the memorandum was controlling as to the immigration status to be accorded to an alien who has returned to the United States from Canada, the respondent was subject to the statutes and regulations regarding aliens seeking admission to the United States. Specifically, the Immigration Judge determined that the respondent was an arriving alien and was therefore not removable under section 237(a)(1)(B) of the Act as an admitted alien present in the United States in violation of law. We agree.

Section 235(a)(1) of the Act, 8 U.S.C. § 1225(a)(1) (2000), provides that "[a]n alien present in the United States who has not been admitted or who arrives in the United States . . . shall be deemed for purposes of this Act an applicant for admission." An applicant for admission coming or attempting to come into the United States at a port-of-entry is an arriving alien. *See* 8 C.F.R. § 1001.1(q) (2007). Furthermore, "[a]ll aliens . . . who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States shall be inspected by immigration officers." Section 235(a)(3) of the Act. In view of the above, we find no error in the Immigration Judge's termination of removal proceedings under section 240

of the Act, 8 U.S.C. § 1229a (2000), on the basis of his finding that the respondent is an arriving alien. We will therefore affirm the Immigration Judge's decision.[5]

We are not persuaded by the assertion in the dissenting opinion that our decision affirming the Immigration Judge's termination of removal proceedings in some way undermines the implementation of the Safe Third Country Agreement. First, our interpretation of the relevant statutes, regulations, and international agreements between the United States and Canada in no way abrogates the Safe Third Country Agreement. Secondly, neither of the parties argued on appeal that the Safe Third Country Agreement was applicable to an alien placed in removal proceedings under section 240 of the Act, but was inapplicable to an arriving alien in expedited removal under section 235(b)(1)(A) of the Act. In fact, it is only the dissenting opinion that asserts that "[b]y holding that the respondent is an arriving alien, we do not preclude her from seeking asylum in the United States, in direct contravention of section 208(a)(2)(A) of the Act." *Matter of R-D-*, 24 I&N Dec. 221, 229 (BIA 2007). A thorough review of the regulations clearly dispels this assertion, however.

The dissenting opinion relies on 8 C.F.R. §§ 1208.4(a)(6) and 1240.11(g) (2007) to support the proposition that an Immigration Judge has authority to determine whether an alien in removal proceedings under section 240 of the Act is subject to the Safe Third Country Agreement. That is not in dispute. However, the regulations do not limit the authority to implement the Safe Third Country Agreement solely to Immigration Judges in removal proceedings under section 240 of the Act. In fact, 8 C.F.R. § 208.30(e)(6) specifically provides as follows:

> Prior to any determination concerning whether an alien arriving in the United States at a U.S.-Canada land border port-of-entry or in transit through the U.S. during removal by Canada has a credible fear of persecution or torture, the asylum officer shall conduct a threshold screening interview to determine whether such an alien is ineligible to apply for asylum pursuant to section 208(a)(2)(A) of the Act and subject to removal to Canada by operation of the Agreement Between the Government of the United States and the Government of Canada For Cooperation in the Examination of Refugee Status Claims from Nationals of Third Countries . . . .

---

[5] Certain arriving aliens are subject to expedited removal. *See* section 235(b)(1)(A)(i) of the Act; *see also* 8 C.F.R. § 235.3(b)(1)(i) (2007) (providing that arriving aliens found inadmissible under sections 212(a)(6)(C) and (7) of the Act, 8 U.S.C. §§ 1182(a)(6)(C) and (7) (2000) are subject to expedited removal). We need not decide whether such aliens may also be placed into removal proceedings under section 240 of the Act.

Therefore, the regulations provide that both aliens in removal proceedings under section 240 of the Act and arriving aliens in expedited removal proceedings under section 235(b)(1)(A) of the Act are subject to the Safe Third Country Agreement. Additionally, the Safe Third Country Agreement may be enforced by either Immigration Judges or immigration officials. As a result, our holding that the respondent was, in fact, an arriving alien does not allow her to circumvent the Safe Third Country Agreement or to alter, amend, or abrogate that agreement in any way. Moreover, as previously noted, the Safe Third Country Agreement does not mandate the status to be accorded to an alien who is subject to the immigration laws of the United States.

## B. Parole into the United States

The respondent also asserts on appeal that the Immigration Judge erroneously determined that she was not paroled into the United States. However, the question of the respondent's current status as a parolee in the United States is moot given our conclusion that the Immigration Judge properly terminated removal proceedings based on his determination that she is an arriving alien. Accordingly, we will not address the issue further, and we will dismiss the respondent's appeal in that regard.

## IV. CONCLUSION

The Immigration Judge correctly concluded that the respondent departed the United States when she traveled to Canada and pursued an application for refugee status in Canada. Consequently, the Immigration Judge also properly found that the respondent was an arriving alien when she returned to the United States. Therefore, we find no error in the Immigration Judge's decision to terminate removal proceedings, because the respondent was charged under section 237(a)(1)(B) of the Act, rather than as an arriving alien under section 235(a)(1). Accordingly, we will affirm the Immigration Judge's decision. The respondent's appeal regarding parole will be dismissed.

**ORDER:** The December 21, 2004, decision of the Board is vacated.

**FURTHER ORDER:** The October 28, 2005, decision of the Immigration Judge is affirmed.

**FURTHER ORDER:** The respondent's appeal from the Immigration Judge's finding that she was not paroled into the United States is dismissed.

*DISSENTING OPINION*:  Patricia A. Cole, Board Member

I respectfully dissent.  I would defer to the interpretation of the law offered by the Department of Homeland Security ("DHS"), which is reasonable and consistent with the Immigration and Nationality Act and the regulations.  In particular, I agree with the DHS that our decision in *Matter of T-*, 6 I&N Dec. 638 (BIA 1955), remains applicable to the respondent's case despite the revised language of section 101(a)(13) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(13) (2000), which replaced the word "entry" with the terms "admission" and "admitted."  As argued by the DHS, there is no evidence to support the Immigration Judge's determination that Congress implicitly repealed our decision in *Matter of T-* when it revised section 101(a)(13) of the Act.  In fact, I note that the term "entry," as discussed in *Matter of T-*, is still a necessary condition to the operation of section 101(a)(13) of the Act.

In our decision in *Matter of T-*, *supra*, we determined that in order for there to be a recognized departure from the United States, there must be an "entry" into another country.  Without such an "entry" into another country, it cannot be said that an alien has departed the United States.  *Id*.  We further noted that an "entry" into another country cannot be said to have been made when an alien returns to the United States "after having been denied entry into a foreign country to which he intended to proceed, *although physically in such foreign country*." *Id*. at 640 (emphasis added).

While the majority attempts to distinguish the case by asserting that the respondent was given permission to go into Canada to apply for refugee status, was never detained, and remained in that country for several years, these facts do not establish that the respondent "departed" the United States or that she was "admitted" into Canada.  As a result, the majority does not effectively distinguish this case from *Matter of T-*, because the facts do not establish that the respondent was ever admitted into Canada.  The rationale of *Matter of T-* supports a finding that the respondent did not "depart" the United States because, although she was physically present in Canada for a period of time while seeking asylum, she was ultimately denied relief and admission to Canada.  Therefore, she cannot be said to have departed the United States.  Thus, pursuant to our decision in *Matter of T-*, *supra*, there was no recognized departure from the United States because there was no entry or admission into another country.

Moreover, as noted by the DHS, this interpretation of *Matter of T-*, *supra*, was confirmed when the DHS published its regulations regarding the Agreement between the Government of the United States of America and the Government of Canada for Cooperation in the Examination of Refugee Status

Claims from Nationals of Third Countries ("Safe Third Country Agreement"). *See* Implementation of the Agreement Between the Government of the United States of America and the Government of Canada Regarding Asylum Claims Made in Transit and at Land Border Ports-of-Entry; 69 Fed. Reg. 69,480 (Nov. 29, 2004) (final rule, effective Dec. 29, 2004); 69 Fed. Reg. 10,620 (proposed Mar. 8, 2004). The DHS's proposed regulations specifically stated that those aliens returned to the United States from Canada under the Safe Third Country Agreement would not be placed into expedited removal proceedings because of the Board's holding in *Matter of T-*, *supra*, that "an alien who goes abroad but is returned to the United States after having been formally denied admission by the foreign country is not an applicant for admission, since, in contemplation of law, the alien did not leave the United States." 69 Fed. Reg. at 10,624. According to the proposed regulations, "[t]hose who entered the United States legally or illegally and are later denied admission by Canada [would not be] arriving aliens." *Id.* Similarly, the Supplemental Information to the DHS's final rules explained:

> For purposes of U.S. immigration law, [asylum seekers returned from Canada under the Agreement] will be in the same position they would be in had they not left the United States. . . . [Such returnees generally] will not be subject to expedited removal because they will not meet the definition of "arriving alien." [However,] [d]epending on the individual's immigration status in the United States, he or she may be subject to removal proceedings under section 240 of the Act . . . .

69 Fed. Reg. at 69,484; *see also* Asylum Claims Made by Aliens Arriving From Canada at Land Border Port-of-Entry, 69 Fed. Reg. 69,490, 68,494 (Nov. 29, 2004) (Department of Justice counterpart final rule, effective Dec. 29, 2004) (evaluating how the Agreement applies to aliens whom the DHS has placed into removal proceedings, and noting that the manner in which asylum seekers returned to the United States from Canada under the Agreement will be received and processed is within the province of the DHS).

The DHS's application of our decision in *Matter of T-*, *supra*, promotes fairness and administrative efficiency. As occurred in this case, it allows an alien to be treated as never having left the United States, whether Canada refuses entry to the alien immediately or takes significant time to consider an alien's refugee claim.

Further, the regulations and the Safe Third Country Agreement provide that aliens, such as the respondent, who seek asylum in Canada not be placed in proceedings that give the alien another opportunity to seek asylum in the United States. By holding that the respondent is an arriving alien, we do not preclude her from seeking asylum in the United States, in direct contravention of section 208(a)(2)(A) of the Act, 8 U.S.C. § 1158(a)(2)(A) (2000). If on the other hand, the respondent is in removal proceedings, the regulations preclude

her from establishing eligibility for asylum.  *See* 8 C.F.R. §§ 1208.4(a)(6), 1240.11(g)  (2007).

Finally, the Safe Third Country Agreement is the DHS's reasonable implementation of section 208(a)(2)(A) of the Act to prevent most persons arriving from Canada from applying for asylum in the United States if they have sought such relief in Canada.  Consequently, I would reverse the Immigration Judge and find the respondent to be properly placed in removal proceedings consistent with 8 C.F.R. §§ 1208.4(a)(6) and 1240.11(g), because Immigration Judges can consider section 208(a)(2)(A) of the Act only with respect to aliens in removal proceedings.