**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0791n.06

No. 10-4393

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**

*Jul 20, 2012*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| OSCAR ARNOLDO GONZALEZ SAGASTUME et al., | ) ) ) | |
| **Petitioners,** | ) ) ) | ON PETITION FOR REVIEW OF AN ORDER OF THE BOARD OF IMMIGRATION APPEALS |
| v. | ) ) | |
| ERIC H. HOLDER, JR., Attorney General | ) ) | **O P I N I O N** |
| **Respondent.** | ) ) ) | |

**Before:  SILER and MOORE, Circuit Judges; VAN TATENHOVE, District Judge.**[*]

**KAREN NELSON MOORE, Circuit Judge.**  Petitioners Oscar Arnoldo Gonzalez Sagastume ("Gonzalez"), his wife Wendy, and their children Oscar and Sara petition for review of an order of the Board of Immigration Appeals ("BIA") affirming the Immigration Judge's ("IJ") denial of voluntary departure and subsequent order of removal to Guatemala.  Specifically, Gonzalez challenges the IJ's determination that he was statutorily ineligible for voluntary departure under 8 U.S.C. § 1229c(b).  Because the IJ correctly determined that Gonzalez was ineligible for voluntary departure, we DENY the petition for review.

**I.  BACKGROUND**

---

[*]The Honorable Gregory F. Van Tatenhove, United States District Judge for the Eastern District of Kentucky, sitting by designation.

Gonzalez, a citizen of Guatemala, entered the United States as a non-immigrant visitor at the Pharr, Texas port of entry in November 2000 with permission to remain until May 2001. From Texas, Gonzalez travelled to Cleveland, Ohio, where he remained for approximately one month before leaving the United States for Canada, where he sought asylum as a refugee. Canada denied the asylum request and returned Gonzalez to the United States pursuant to the Reciprocal Agreement on November 9, 2004.[1] That same day, the United States Department of Homeland Security ("DHS") served Gonzalez with a Notice to Appear ("NTA") (Form I-862) alleging that he was subject to removal under 8 U.S.C. § 1227(a)(1)(B) as an admitted alien who had remained in the United States longer than permitted under the terms of his admission.[2]

Prior to Gonzalez's removal hearing, the BIA issued its opinion in *Matter of R-D-*, 24 I. & N. Dec. 221 (BIA 2007), which held that aliens returning to the United States from Canada pursuant to the Reciprocal Agreement were arriving aliens under the Immigration and Nationality Act ("INA") and were thus not subject to removal under § 1227, which applies only to admitted aliens. On April 15, 2008, DHS served Gonzalez with an Additional Charges of Inadmissibility/Deportability form (Form I-261) charging him with removability under 8 U.S.C. § 1182(a)(7)(A)(i)(I) as an inadmissible alien based on his presence in the United States without a valid entry document.

---

[1] The Reciprocal Agreement governs the exchange of deportees between the United States and Canada.

[2] Section 1227 provides for the removal of admitted aliens who are present in the United States in violation of any law.

At his removal hearing, Gonzalez conceded removability under § 1182 and requested voluntary departure. After this concession, Gonzalez's attorney informed the IJ that "there's a stipulation again with the understanding of counsel that my client will then qualify for post hearing voluntary departure." A.R. at 122–23. The following colloquy ensued regarding the statutory requirement for voluntary departure that the alien must have been physically present in the United States for one year prior to receiving an NTA:

> Judge to Ms. Peyton: As for eligibility for post conclusion voluntary departure, then was there -- did the respondents have the 1 year of presence before the Notice to Appear was served?
> Ms. Peyton to Judge: Your Honor, and that's -- counsel and I really have pretried this pretty extensively, and for some reason, both of us, that kind of escaped both of us. So the original NTA was in November 9th of 2004, and they've been here since -- they definitely have the 1-year substituted NTA, since -- the I-261 from which this -- I mean, it changes the entire classification. He was previously admitted and present, and now he's an arriving alien. So yes, there's the April 15th, '08. His previous entrance before the NTA date was November 9th, 2004. Before that, he was in the states for a month in November of '99, another month in November of 2000. So, I guess I'm answering that kind of a halfway yes.

*Id.* at 124–25. And later:

> Judge to Ms. Peyton: So be correct that the I-261 was served at a time when the respondent had been present in the United States for 1 year, but I don't think that's the case with the Notice to Appear, Ms. Peyton.
> Ms. Peyton to Judge: Yes, sir.

*Id.* at 127.

The IJ denied voluntary departure, finding that Gonzalez was statutorily ineligible because he had not been present in the United States during the year prior to receiving the NTA, and ordered Gonzalez removed to Guatemala. On appeal to the BIA, Gonzalez argued that the IJ should have

granted voluntary departure because the parties had stipulated that Gonzalez was eligible. Noting

the effect of the intervening *Matter of R-D-* decision on his status and the new allegations contained

in the 2008 I-261, Gonzalez also contended that the required one year of presence in the United

States should have been calculated as of the date of the *R-D-* decision in 2007 rather than as of the

2004 NTA. The BIA rejected both arguments and affirmed the IJ's decision. Gonzalez filed a

petition for review in this court.

## II. ANALYSIS

Under the INA, the Attorney General may permit an alien who is subject to removal to depart

the country voluntarily if the alien meets certain conditions. *See* 8 U.S.C. § 1229c. Typically, the

Attorney General may grant voluntary departure either prior to or after the conclusion of removal

proceedings. *See id.* § 1229c(a)(1), (b)(1). An arriving alien like Gonzalez is eligible only for post-

conclusion voluntary departure, however. *Id.* § 1229c(a)(4).[3]

At the conclusion of removal proceedings, the IJ has discretion to grant voluntary departure

to an alien if

> (A) the alien has been physically present in the United States for a period of at least
> one year immediately preceding the date the notice to appear was served under
> section 1229(a) of this title;
> (B) the alien is, and has been, a person of good moral character for at least 5 years
> immediately preceding the alien's application for voluntary departure;
> (C) the alien is not deportable under section 1227(a)(2)(A)(iii) or section 1227(a)(4)
> of this title; and

---

[3]Both parties agree that, pursuant to *Matter of R-D-*, Gonzalez is properly classified as an arriving alien.

> (D) the alien has established by clear and convincing evidence that the alien has the means to depart the United States and intends to do so.

*Id.* § 1229c(b)(1). Gonzalez concedes that he was not present in the United States during the year immediately preceding service of the NTA in November 2004, but argues that he is nonetheless eligible for voluntary departure because the parties stipulated to his eligibility and because *Matter of R-D-* and the I-261 so changed the posture of his case that the date for calculating the length of his presence in the United States should have been reset to either 2007 or 2008.

In cases where the BIA adopts the decision of the IJ and contributes its own analysis, "we review the opinion of the IJ in conjunction with the BIA's additional comments and discussion." *Abdurakhmanov v. Holder*, 666 F.3d 978, 981 (6th Cir. 2012) (internal quotation marks omitted). We review findings of fact for substantial evidence and questions of law de novo. *Id.*

Before reaching the merits of Gonzalez's petition, we must first address an issue of jurisdiction. We generally lack subject-matter jurisdiction over appeals from the denial of a request for voluntary departure, 8 U.S.C. §§ 1229c(f), 1252(a)(2)(B)(i), but an exception exists for "constitutional claims or questions of law," *id.* § 1252(a)(2)(D). Although the decision to grant voluntary departure is discretionary, and thus beyond our power to review, satisfaction of the four statutory requirements is a condition precedent to any exercise of that discretion. *See Billeke-Tolosa v. Ashcroft*, 385 F.3d 708, 711 (6th Cir. 2004) ("A prohibition against the review of a discretionary decision need not extend to non-discretionary decisions upon which the discretionary decision is predicated."); *Alvarado v. U.S. Att'y Gen.*, 610 F.3d 1311, 1314 (11th Cir. 2010) ("Although we lack jurisdiction to review a discretionary decision denying voluntary departure, we retain jurisdiction to

review non-discretionary legal determinations as to statutory eligibility for discretionary relief.").

Moreover, Gonzalez's specific challenge to the IJ's decision is fundamentally legal in nature, raising

the question of what effect a stipulation of eligibility, *Matter of R-D-*, and the 2008 I-261 had on

whether the first requirement for voluntary departure had been met. This is a threshold question of

law that we can review, and that we review de novo. *Abdurakhmanov*, 666 F.3d at 981.[4]

## A.  Stipulation

Gonzalez first argues that the IJ erred in denying voluntary departure because the parties had

stipulated that Gonzalez would qualify for such relief. Parties cannot stipulate around a statutory

requirement. *See Neuens v. City of Columbus*, 303 F.3d 667, 670 (6th Cir. 2002) (explaining that

"[p]arties may not stipulate to . . . legal conclusions" and that "[c]ourts . . . are not bound to accept

as controlling, stipulations as to questions of law") (internal quotation marks omitted); H.D. Warren,

*Relief From Stipulations*, 161 A.L.R. 1161 (1946 & 2011 Supp.) ("[S]tipulations as to what the law

is are of no validity.").[5]  Moreover, whatever agreement that the parties made regarding voluntary

departure clearly did not include a factual stipulation that Gonzalez had been present in the country

---

[4]Although Gonzalez does not challenge the IJ's factual determinations as to when Gonzalez was physically present in the United States, it is also worth noting that we have held that "[t]he denial of relief based on the ground that the alien has failed to demonstrate a continuous physical presence . . . is a non-discretionary factual determination and properly subject to appellate review." *Santana-Albarran v. Ashcroft*, 393 F.3d 699, 703 (6th Cir. 2005).

[5]The regulation providing that government counsel "may stipulate to a grant of voluntary departure," 8 C.F.R. § 1240.26(b)(2), applies to pre-conclusion voluntary departure, which does not require one year of physical presence in the United States and for which arriving aliens such as Gonzalez are not eligible, *see* 8 U.S.C. § 1229c(a).

for a year prior to November 2004, because Gonzalez conceded that he was not present during that time.

**B. Reset the Clock**

As described above, voluntary departure requires that "the alien has been physically present in the United States for a period of at least one year immediately preceding the date the notice to appear was served under section 1229(a)." 8 U.S.C. § 1229c(b)(1)(A). DHS served Gonzalez with an NTA on November 9, 2004. Notwithstanding this fact, Gonzalez argues that *Matter of R-D-* and the 2008 I-261 so changed the nature of his case that the one-year requirement for voluntary departure should be calculated from either July 2007 (when *Matter of R-D-* was decided) or April 2008 (when DHS served Gonzalez with the I-261). It is undisputed that Gonzalez was present in the United States for the years preceding both dates.

Gonzalez is correct that *Matter of R-D-* changed the nature of his case, but it did not do so as to the issue of voluntary departure. We thus see no reason why the date that opinion was issued should serve as the point of reference for the one-year requirement. As a result of *Matter of R-D-*, Gonzalez was reclassified as an arriving alien rather than an admitted alien. To the extent he is arguing that we should treat the 2004 NTA as if it had been filed in 2007, he does not explain why a change in the legal posture of the case based on his own change in status should lead to this result.

Gonzalez next contends that the date on which DHS issued the 2008 I-261 should serve as the point of reference because the I-261 was functionally a new NTA that replaced the essentially

inapplicable 2004 NTA.[6] Although the I-261 describes its contents as "substituted charge(s)" and "factual allegation(s) in lieu of those set forth in the original charging document," it does not expressly purport to terminate the original removal proceedings or otherwise nullify the 2004 NTA. Indeed, DHS has the authority, "[a]t any time during deportation or removal proceedings, [to lodge] additional or substituted charges of deportability and/or factual allegations." 8 C.F.R. § 1003.30. Nonetheless, Gonzalez asserts that the I-261 "effectively nullified" the 2004 NTA, Pet'r Br. at 10, and thus should be considered a new NTA.

Because the I-261 is styled "Additional Charges of Inadmissibility/Deportability" rather than "Notice to Appear," this argument requires us to consider whether the phrase "notice to appear" in § 1229c is limited to DHS Form I-862, the form that is officially designated a "Notice to Appear." Section 1229c does not define "notice to appear," but refers to "section 1229(a) of this title." 8 U.S.C. § 1229c(b)(1)(A). Section 1229(a) describes a notice to appear as "written notice . . . specifying the following:"

(A) The nature of the proceedings against the alien.
(B) The legal authority under which the proceedings are conducted.
(C) The acts or conduct alleged to be in violation of law.
(D) The charges against the alien and the statutory provisions alleged to have been violated.
(E) The alien may be represented by counsel and the alien will be provided (i) a period of time to secure counsel under subsection (b)(1) of this section and (ii) a current list of counsel prepared under subsection (b)(2) of this section.
(F)(i)The requirement that the alien must immediately provide (or have provided) the Attorney General with a written record of an address and telephone number (if

---

[6]The government believes that Gonzalez waived this argument. As explained below, the argument is unsuccessful even if exhausted.

any) at which the alien may be contacted respecting proceedings under section 1229a of this title.
(ii)The requirement that the alien must provide the Attorney General immediately with a written record of any change of the alien's address or telephone number.
(iii)The consequences under section 1229a(b)(5) of this title of failure to provide address and telephone information pursuant to this subparagraph.
(G)(i)The time and place at which the proceedings will be held.
(ii)The consequences under section 1229a(b)(5) of this title of the failure, except under exceptional circumstances, to appear at such proceedings.

8 U.S.C. § 1229(a)(1); *see also* 8 C.F.R. § 1003.13 (describing a notice to appear as a "written instrument which initiates a proceeding before an Immigration Judge").

Although the 2008 I-261 nearly complies with all of the requirements of a notice to appear under § 1229(a), it does not completely do so. Because the 2008 I-261 does not contain "[t]he time and place at which the proceedings will be held," it cannot qualify as a notice to appear under §1229(a), *see* 8 U.S.C. § 1229(a)(1)(G)(i), or, consequently, under § 1229c. Therefore, the question of whether an I-261 that meets all of the criteria listed in § 1229(a) can ever serve as a "notice to appear" for the purpose of calculating the length of an alien's physical presence in the United States is not squarely presented to us, and we do not answer it.

The 2004 NTA is the only document in this case that qualifies as a "notice to appear" for purposes of the one-year requirement. Because Gonzalez was not physically present in the United States for the year immediately preceding November 9, 2004, he is ineligible for voluntary departure.

### III. CONCLUSION

The IJ correctly determined that Gonzalez is statutorily ineligible for voluntary departure. We therefore DENY Gonzalez's petition for review of the BIA's decision upholding the IJ's denial of Gonzalez's request for voluntary departure.