[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-15495
Non-Argument Calendar
_____

Agency No. A024-690-603

SHADE LAWAL,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(February 28, 2013)

Before TJOFLAT, MARCUS, and KRAVITCH, Circuit Judges.

PER CURIAM:

Shade Lawal petitions for review of the Board of Immigration Appeal's ("BIA") dismissal of his appeal of the denial of his application for a waiver of inadmissibility under § 212(h) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(h).

Shade Lawal is a native and citizen of Nigeria. He became a lawful permanent resident of the United States in 1981. In 2004, Lawal was convicted in Georgia state court of theft by taking and sentenced to twenty-four months of imprisonment. He was convicted again in 2008 in Georgia state court of employment insurance fraud and sentenced to twelve months of imprisonment. In 2009, after leaving the United States for a two-week trip to Nigeria, Lawal lawfully reentered. In 2010, the Department of Homeland Security initiated removal proceedings against Lawal, charging him as removable for having been convicted of two crimes involving moral turpitude, 8 U.S.C. § 1227(a)(2)(A)(ii), and for having been convicted of an aggravated felony involving a theft offense, *id.* § 1227(a)(2)(A)(i).[1] At his removal proceeding, Lawal submitted an application for a § 212(h) waiver of inadmissibility. The Immigration Judge ("IJ") denied the

---

[1] Lawal's theft offense served as the basis for the aggravated felony ground of removal, 8 U.S.C. § 1227(a)(2)(A)(iii), as well as one of the two convictions required for the multiple convictions of crimes involving moral turpitude ground of removal, i*d.* § 1227(a)(2)(A)(ii).

application, finding that Lawal was not eligible for a waiver because he had been convicted of an aggravated felony after he had been previously admitted to the United States as a lawful permanent resident.

Lawal appealed the IJ's denial of his waiver application to the BIA.  Citing our decision in *Lanier v. U.S. Att'y Gen.*, 631 F.3d 1363 (11th Cir. 2011), the BIA agreed with Lawal that his convictions did not render him ineligible for a § 212(h) waiver.  Nevertheless, the BIA dismissed the appeal after finding that Lawal was ineligible for the waiver because he failed to concurrently file an application for adjustment of status with his waiver application.  *See* 8 C.F.R. § 1245.1(f) ("[A]n application [for adjustment of status] under this part shall be the sole method of requesting the exercise of discretion under sections 212(g), (h), (i), and (k) of the Act, as they relate to the inadmissibility of an alien in the United States.").  Lawal now petitions this court to review the BIA's decision and claims that the BIA ignored its own binding precedent, *Matter of Sanchez*, 17 I. & N. Dec. 218 (BIA 1980), in dismissing his appeal.

Lawal argues that the BIA's decision in *Sanchez* permits an alien in his circumstances—an alien who has departed the United States and lawfully returned after becoming subject to removal—to apply for a § 212(h) waiver without filing an application for adjustment of status.  In *Sanchez*, a Mexican native entered the United States as a lawful permanent resident and lived here from 1965 to 1970.  In

3

1970, he moved to Mexico and commuted daily into the United States for work until 1976, when he began residing with his family in the United States. After a visit to Mexico in 1976, he was arrested at the U.S. border before he could seek entry[2] into the United States. He was taken into custody, charged with mail fraud, and released the next day into the United States pending his trial—upon his release from custody, the immigration laws treated Sanchez as having entered the United States. *Id.* at 220. Sanchez eventually pleaded guilty to the mail fraud charge and in 1977 was given a suspended sentence of twelve months and one day. Under the immigration laws, Sanchez's conviction rendered him excludable should he depart and try to reenter the country. *Id.* at 222-23. Nevertheless, Sanchez made many

---

[2] Immigration cases prior to 1996 use different terminology from immigration cases after 1996. Before Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), an alien's legal status was determined by whether he had made an "entry" into the United States. "An alien could achieve 'entry' by physically crossing into United States territory regardless of whether the alien crossed legally or evaded inspection." *Poveda v. U.S. Att'y Gen.*, 692 F.3d 1168, 1174 (11th Cir. 2012). Aliens who had not yet entered the United States, and were barred from entering under the immigration laws, were deemed "excludable" and subject to exclusion hearings. *Id.* Aliens who had entered the United States, with or without inspection, were deemed "deportable" and subject to deportation proceedings. *Id.* With the passage of the IIRIRA, the term "entry" was replaced with the term "admission," *see* 8 U.S.C. § 1101(a)(13)(A), an alien deemed "excludable" was now considered "inadmissible," *see id.* § 1182, and exclusion proceedings and deportation proceedings were replaced with a unified "removal proceeding" tasked with determining both inadmissibility and deportability, *see id.* § 1229(a). The term "deportable" no longer merely refers to an alien in the United States; now it refers to an alien in and *admitted to* the United States who is subject to removal. *See id.* § 1227(a). Additionally, the procedure by which an alien is removed from the United States no longer turns on the physical location of the alien. *See Assa'ad v. U.S. Att'y Gen.*, 332 F.3d 1321, 1326 (11th Cir. 2003). "The distinction now turns on status rather than location. An alien in the United States who has been admitted is subject to deportability grounds, while an alien who has not, regardless of his or her location, is subject to inadmissibility grounds." *Poveda*, 692 F.3d at 1174-75 (internal citations omitted). When discussing cases that were decided prior to 1996, we use the terms entry and excludable. When discussing cases that were decided after 1996, we use the terms admitted and inadmissible.

brief trips to Mexico after his conviction and was never denied entry upon his return. *Id.* at 222. Instead of excluding Sanchez at the border after these trips, in 1978 the United States initiated deportation proceedings against him for having been "convicted of a crime of moral turpitude committed within five years after entry." *Id.* at 220.

During the course of these proceedings, Sanchez sought a § 212(h) waiver. Because the facts rendering Sanchez deportable were the same as what rendered him excludable, the BIA found that Sanchez could be eligible for a § 212(h) waiver.[3] *Id.* at 222 (concluding that relief under § 212(h) "may be granted nunc pro tunc in deportation proceedings in order to cure a ground of [excludability] at the time of entry"). By permitting access to the § 212(h) waiver *nunc pro tunc*, the BIA effectively treated Sanchez's waiver application as if he were seeking admission at the border, even though Sanchez was in a deportation proceeding. *See id.* at 223 ("[A] waiver of the ground of [excludability] may be granted in a deportation proceeding when, at the time of the alien's last entry, he was [excludable] because of the same facts which form the basis of his deportability.").[4]

---

[3] The BIA's final determination of § 212(h) eligibility in *Sanchez* was contingent upon the outcome of certain other inquiries not relevant here.

[4] 8 C.F.R. § 1245.1, the Department of Homeland Security' s current regulation governing the adjustment of status applications, indicates that filing an adjustment of status application is "the sole method" for an alien located "in the United States" to seek a § 212(h) waiver. 8 C.F.R. § 1245.1(f). Despite § 1245.1(f)'s exclusive wording, § 1245.1(f)'s virtually identical predecessor,

The BIA's decision in *Sanchez* established that aliens who become excludable after an original lawful entry may later be deported from the United States if they depart and return, but they may also be eligible for waivers of excludability after they have reentered.  Following *Sanchez*, the BIA's policies effectively created two classes of deportable aliens who were eligible for a § 212(h) waiver: (1) deportees who had not left the country since becoming deportable that filed an adjustment of status application while seeking the § 212(h) waiver, *see* 8 C.F.R. § 1245.1(f); and, after *Sanchez*, (2) deportees who had departed and returned to the United States whose grounds for deportation were based on the same facts that rendered them excludable at their last entry. [5] Deportees belonging to the second class were not required to submit an application for adjustment of status with their application for the § 212(h) waiver.

Decisions of this court and changes in the immigration laws, however, have called *Sanchez*'s viability into question.  In *Yeung v. INS*, 76 F.3d 337, 341 (11th

---

§ 245.1(f), was in place when *Sanchez* was decided.  *See* Adjustment of Status to That of Person Admitted for Permanent Residence, 30 Fed. Reg. 14778 (Nov. 30, 1965) ("[A]n application under this part shall be the sole method of requesting the exercise of discretion under sections 212(g), (h), and (i) of the Act, insofar as they relate to the excludability of an alien in the United States.").  Sanchez, however, was held to be eligible for § 212(h) relief without having to submit an application for adjustment of status.  Accordingly, *Sanchez* effectively created another method to obtain § 212(h) relief for aliens in the United States in addition to the "sole method" described in the regulation.

[5] Aliens who are seeking admission into the United States at the border (but who have not yet entered and been admitted) are also eligible for a § 212(h) waiver without having to submit an adjustment of status application.  *See Matter of Abosi*, 24 I. & N. Dec. 204, 207 (BIA 2007).  Aliens in this scenario are not considered "deportable" because they are not in, and have not been admitted to, the United States.  *See* 8 U.S.C. § 1227(a).

6

Cir. 1995), a lawful permanent resident—who was ineligible to apply for an adjustment of status and who had remained in the United States after being convicted of a deportable offense—challenged the BIA's policy of permitting only those aliens who departed and returned to the United States to seek a § 212(h) waiver without also filing for an adjustment of status, arguing that this policy was a violation of the equal protection component of the Fifth Amendment's due process clause. We agreed and held that no rational basis existed for the BIA's position that an alien is ineligible for the § 212(h) waiver "simply by virtue of his failure to depart and reenter." *Id.* at 340. We remanded the case to the BIA to reconsider its prior interpretation of § 212(h) in light of that holding.[6]

Recently, in *Poveda v. U.S. Att'y Gen.*, 692 F.3d 1168 (11th Cir. 2012), we indicated that, following our holding in *Yeung* and the substantial revision to the immigration laws by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), the BIA had altered its position on § 212(h) eligibility with regards to whether a deportable alien had departed and reentered the United

---

[6] Following our ruling in *Yeung* but before the BIA issued a new decision, Congress passed the IIRIRA. That legislation made two changes to the immigration laws relevant to the determination of Yeung's case: (1) the IIRIRA barred an alien previously admitted as a lawful permanent resident from obtaining a § 212(h) waiver if the alien had been convicted of an aggravated felony; and (2) this new bar applied retroactively to aliens who were in exclusion or deportation proceedings on the date of enactment of the IIRIRA. Pub. L. No. 104-208, § 348, 110 Stat. 3009-546, 3009-639. On remand, instead of addressing this court's holding in *Yeung* that found the BIA's interpretation of § 212(h) unconstitutional, the BIA found that Yeung was not eligible for the waiver because (1) Yeung had been convicted of an aggravated felony after having been previously admitted into the United States as a lawful permanent resident and (2) the IIRIRA applied retroactively to Yeung's case. *Matter of Yeung*, 21 I. & N. Dec. 610, 611-12 (BIA 1996).

States.  In *Poveda*, a lawful permanent resident—who was deemed ineligible for a § 212(h) waiver because he failed to also file an application for adjustment of status—raised the same equal protection claim brought in *Yeung*.  We rejected this argument, noting that the BIA had "backed away from" the international travel/lack of international travel distinction it employed in *Yeung*.  *Poveda*, 692 F.3d at 1174.  Now, the BIA differentiates "between those criminal aliens who *seek to be admitted to* the United States, and those criminal aliens who are *being deported from* the United States."  *Id.* at 1177 (quoting *Klementanovksy v. Gonzales*, 501 F.3d 788, 793 (7th Cir. 2007)).  Eligibility for a § 212(h) waiver, therefore, is now available in two situations:

> first, the Attorney General may provide a [§ 212(h)] waiver to an alien at the border who seeks admission, including an alien who has departed the United States after committing a deportable offense, *so long as the alien remains outside our borders while applying for relief*; and second, the Attorney General may provide a [§ 212(h)] waiver to an alien within our borders after his conviction for a deportable offense so long as he applies for an adjustment of status.

*Id.* at 1173 (emphasis added).

Lawal's case reveals that ambiguity exists between the BIA's current interpretation of § 212(h) as articulated in *Poveda*, prior BIA precedent under *Sanchez*, and the immigration statutes.  Currently, a lawful permanent resident who returns from abroad typically is not regarded as an applicant for admission under the immigration laws.  *See* 8 U.S.C. § 1101(a)(13)(C).

8

But a lawful permanent resident who is convicted of certain crimes before departing the United States is considered an applicant for admission upon his return.  *Id.* § 1101(a)(13)(C)(v).  Because Lawal left the country after committing his fraud and theft offenses, the immigration laws considered him as seeking admission at the time he returned to the United States.  *See id.* §§ 1182(a)(2); 1101(a)(13)(C)(v).  The manner in which the immigration statutes regard an alien in Lawal's circumstances—as an alien seeking admission—raises some questions as to how he should be treated in light of BIA precedent.

BIA precedent has established that in certain circumstances an alien in the United States subject to deportation is nevertheless treated as if he were outside the border seeking admission into the United States.  Under *Sanchez*, the BIA has treated an alien in a deportation proceeding that seeks a § 212(h) waiver as if he were seeking admission into the United States, provided that the alien was inadmissible at the time of the alien's last entry.[7]  *See Sanchez,* 17 I. & N. Dec. at 223.

_____

[7]  This approach has long been employed by the BIA.  *See e.g.*, *Matter of L—*, 1 I. & N. Dec. 1, 5 (BIA, A.G. 1940).  In *Matter of L—*, an alien lawfully residing in the United States was convicted of larceny and later briefly departed from the United States.  Under the immigration laws in place in 1940, L—'s conviction rendered him excludable if he departed the United States—but such excludability could be waived pursuant to the discretion of the Attorney General.  *Id.* at 4.  At the time, the power to grant a discretionary waiver appeared in the statutory sections relating to the exclusion of aliens seeking entry into the United States, but no corresponding waiver was present in sections involving deportation.  *Id.*  Upon L—'s return, he

9

Similarly, 8 C.F.R. § 1245.1(f) treats an alien in the United States who has submitted an application for adjustment of status as if the alien were outside the country seeking admission into the United States. *See Cabral v. Holder*, 632 F.3d 886, 891 (5th Cir. 2011) ("[A]liens who are already in the United States must apply for an adjustment of status under 8 U.S.C. § 1255; upon application, the applicant is assimilated to the position of an alien outside the United States seeking entry as an immigrant.") (internal quotation marks omitted); *Matter of Gonzalez-Camarillo*, 21 I. & N. Dec. 937, 947-50 (BIA 1997) (Rosenberg, dissenting) (cataloguing prior BIA precedent acknowledging that an individual seeking adjustment of status in a deportation proceeding is assimilated to the position of an alien outside our borders seeking admission into the United States).

The BIA's current interpretation of § 212(h) permits the Attorney General to grant a waiver to "an alien at the border who seeks admission, including an alien who has departed the United States after committing a

_____

was permitted entry into the United States, though the border inspector could have denied his entry because of his conviction. *Id.* at 3. Later, L— was placed in deportation proceedings and was ordered removed from the country. On appeal of this order, the Board of Review certified L—'s case to the Attorney General, who concluded that there would be great inequity to grant relief to aliens who were stopped and challenged upon reentry but deny relief to those aliens who were excludable, nonetheless permitted entry, and later charged with being deportable. *Id.* at 5. Accordingly, the Attorney General ruled that an alien who was excludable at the time of reentry but had been granted entry to the United States and later was subjected to deportation proceedings could be granted *nunc pro tunc* relief, where the alien would be treated as if he were applying for permission to enter the country from "outside the United States." *Id.* at 6. *Sanchez* is an extension of the practice established in *L—*.

deportable offense, so long as the alien remains outside our borders while applying for relief." *Poveda*, 692 F.3d at 1173.  But, as we have seen, BIA precedent already treats certain aliens in the United States as if they were outside our borders seeking admission into the United States. *See e.g.*, *Sanchez*, 17 I. & N. Dec. at 223.  It is thus unclear whether the BIA's current interpretation of § 212(h)—that an alien seeking § 212(h) relief who has not filed an adjustment of status application must remain "outside our borders while applying for relief"—overrules *Sanchez*, or if the BIA's current interpretation essentially functions as a continuation of its precedent under *Sanchez*, in which case the BIA would treat an alien satisfying the conditions of *Sanchez* as if the alien were "outside our borders while applying for relief."

This is "an area of law where uniformity is particularly important." *Jaramillo v. INS*, 1 F.3d 1149, 1155 (11th Cir. 1993) (en banc).  "When the BIA has not spoken on a matter that statutes place primarily in agency hands, our ordinary rule is to remand to give the BIA the opportunity to address the matter in the first instance in light of its own expertise." *Negusie v. Holder*, 555 U.S. 511, 517, 129 S.Ct. 1159, 1164, 173 L.Ed.2d 20 (2009) (internal quotation marks omitted).  We therefore remand to the BIA for the purpose of allowing it to consider Lawal's case in light of our intervening decision in *Poveda* and—if the

BIA deems that *Sanchez* is not overruled—to apply *Sanchez* to Lawal's case if the BIA finds that it is applicable.

The BIA also found that Lawal was ineligible for a § 212(h) waiver under the BIA's comparable grounds rule. In *Matter of Blake*, 23 I. & N. Dec. 722, 729 (BIA 2005), the BIA held that an alien who was deportable based on a charge of deportability to which there was no comparable ground of inadmissibility was ineligible for a waiver under former § 212(c) of the Immigration and Nationality Act. The BIA applied this comparable grounds rule to Lawal in the context of his application for a § 212(h) waiver and found that no comparable ground of inadmissibility existed. The Supreme Court, however, has recently struck down the BIA's comparable grounds rule as arbitrary and capricious. *Judulang v. Holder*, 132 S.Ct. 476, 477, 181 L.Ed.2d 449 (2011). Accordingly, on remand, the BIA is also to reconsider Lawal's case in light of the Supreme Court's holding in *Judulang*.

VACATED and REMANDED.