In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-3611

VLADISLAV MARGULIS,

*Petitioner*,

*v.*

ERIC H. HOLDER, JR., Attorney General of the United States,

*Respondent*.

Petition to Review Order
of the Board of Immigration Appeals.
No. A070-233-197.

ARGUED MAY 21, 2013—DECIDED AUGUST 5, 2013

Before POSNER, MANION, and ROVNER, *Circuit Judges*.

POSNER, *Circuit Judge*. A lawful permanent resident of the United States who is not a citizen is deportable ("removable," in the current terminology) if he commits nontrivial crimes in the United States. 8 U.S.C. § 1227(a)(2). If he then leaves the United States he cannot be readmitted for at least five years (the length depends on various factors, including the ground or grounds of deportability and whether he had been ordered deported or had self-deported, a term we take

up later). See 8 U.S.C. §§ 1182(a)(9), (a)(9)(B). But the immigration authorities can waive inadmissibility if the crimes that make the alien deportable are minor. 8 U.S.C. § 1182(h) (section 212(h) of the Immigration and Nationality Act). The effect of admission is presumably to wipe the slate clean—to make him no longer deportable on the basis of the crimes he'd committed. Otherwise what would be the point of the waiver?

The alien in this case, Margulis, embarked on a business trip to Canada but was stopped by Canadian immigration officers just inside Canadian territory. They refused to allow him to "enter" Canada (of course he was in Canada when they told him this). So he turned his car around and drove back across the border. He had to clear U.S. customs. The immigration officers at the customs station conducted database inquiries and discovered that Margulis had a criminal record in the United States. They allowed him to return to his home in Illinois—but also placed him in removal proceedings under section 1227(a)(2) on the basis of his criminal record, which made him removable even though his crimes had not been so serious (they had resulted in only 30 days of jail time for him) as to make him ineligible for the waiver we mentioned, were he deemed readmitted to the United States.

Arguing that as an arriving alien he should be eligible for the waiver, Margulis asked that the removal proceedings be terminated and that he be placed in admissibility proceedings instead. The Board of Immigration Appeals refused, precipitating this petition for review. The Board ruled that Margulis had never "entered" Canada and so could not have returned to the United States.

Yet Margulis had entered Canada when he crossed the border and had returned to the United States when he recrossed the border in the other direction. Canada may if it wants call his entry into that country something else (just as Russia deems its international airport transit zones not to be Russian territory), but why should such Aesopian nomenclature bind, or for that matter influence, the U.S. immigration authorities?

One possible answer, though not mentioned by the Board and therefore unavailable to support its ruling, is that the purpose of making a criminal record that is grounds for removal forgivable in the case of a deportable alien returning to the United States is to encourage self-deportation (that is, voluntary deportation). *Klementanovsky v. Gonzales*, 501 F.3d 788, 792–93 (7th Cir. 2007); *Poveda v. U.S. Attorney General*, 692 F.3d 1168, 1177–78 (11th Cir. 2012); *Cabral v. Holder*, 632 F.3d 886, 893 (5th Cir. 2011). Self-deportation reduces the burden on the immigration authorities of dealing with illegal aliens, because it is easier for the immigration authorities to block an alien at the border from returning than it is to find and deport him once he's back inside. The waiver is a bonus for and thus inducement to self-deportation because it gives the self-deporting alien a shot at becoming a lawful permanent resident of the United States.

The Board ruled that Margulis "was not an arriving alien because he was never lawfully admitted to another country, and therefore never effected a departure from the United States." The "therefore" is hard to fathom. Suppose Margulis had made a secret trip to another country to visit a dying relative, and he had made the trip in secret because he was *persona non grata* in that country. Suppose he remained there

for six months, until the relative died, and then returned to the United States. The Board apparently would say that he had "never effected a departure from the United States." That sounds absurd. And the "therefore" contradicts a regulation of the Department of Homeland Security that states that "the term depart from the United States means depart by land, water, or air: (1) From the United States for any foreign place." 8 C.F.R. § 215.1(h). That's an exact description of what Margulis did. Even if he didn't enter Canada, he departed "from the United States for … [a] foreign place," just as a person who boards a plane in Chicago for a flight to Ulan Bator would say that he was departing from the United States for Ulan Bator.

For authority the Board cited, though did not discuss, its 58-year-old decision in *Matter of T-*, 6 I. & N. Dec. 638 (BIA 1955). A lawful permanent resident of the United States boarded a ship for Germany, but was not permitted to debark there because, as he was checking his travel documents preparatory to debarking, a gust of wind swept them out of his hands and into the water. No other foreign country would let him debark either. So back he came to the United States, never having left the ship, and the Board held that this was not a new entry because he had not been admitted to any foreign country. He had entered German territorial waters, and to that extent the case is comparable to the present one. At the time, however, the immigration statute defined "entry" as (so far as related to the case) coming from "a foreign port," 8 U.S.C. § 1101(a)(13) (repealed in 1996), and the Board thought that since the alien had been "refused entry at foreign ports" he had not entered the United States from a foreign port. 6 I. & N. Dec. at 640. The ship had docked at the port, but he had not entered the port and so

could not come from it. The definition of "entry" has been repealed, yet the Board has failed to explain why *Matter of T*, which turned on the meaning of "entry," nevertheless controls Margulis's case.

There is a further wrinkle. Margulis's abortive visit to Canada was not his first departure from the United States. Twice before he had traveled to Canada without incident, and he had also traveled to Venezuela without incident. All three trips had occurred after he had become deportable. Had the immigration authorities been on their toes, they would upon his return from one or another of these trips have placed him in proceedings to determine his admissibility, and he would have sought the waiver he sought unsuccessfully in this case; for on all three occasions he had been allowed to "enter" the foreign country, and thus when he came back to the United States he was uncontroversially a returning alien eligible for the waiver. In *Matter of Sanchez*, 17 I. & N. Dec. 218, 223 (BIA 1980), the Board had held, quoting *Matter of Tanori*, 15 I. & N. Dec. 566, 568 (BIA 1976), that "a waiver of the ground of inadmissibility may be granted in a deportation proceeding when, at the time of the alien's last entry, he was inadmissible because of the same facts which form the basis of his deportability." That describes this case.

The Board mentioned the *Sanchez* case in its opinion denying Margulis's motion for reconsideration of its earlier decision, but said that a regulation promulgated by the Attorney General had overruled *Sanchez* so far as "nunc pro tunc" waivers of inadmissibility were concerned. ("Nunc pro tunc" is Latin for "now for then"; in law it means allowing retroactive correction of errors. *INS v. St. Cyr*, 533 U.S. 289, 294 n. 3 (2001); *Gonzalez-Balderas v. Holder*, 597 F.3d 869,

870 (7th Cir. 2010).) The regulation provides, so far as bears on this case, that an application for adjustment of status "shall be the sole method of requesting the exercise of discretion under…[a list of sections of the immigration statute that includes section 212(h)], as they relate to the inadmissibility of an alien in the United States." 8 C.F.R. § 1245.1(f).

The Board's reliance on this regulation is very strange, since materially identical language has appeared in regulations since at least 1964, see 29 Fed. Reg. 11493 (Aug. 11, 1964)—more than fifteen years before the *Sanchez* decision, and before other decisions as well in which the Board has deemed applicants eligible for nunc pro tunc relief under section 212(h). See *Lawal v. U.S. Attorney General*, 710 F.3d 1288, 1292–93 and n. 7 (11th Cir. 2013) (per curiam). When relief is granted nunc pro tunc, it dates back to when the alien returned from a foreign trip, at which time he would have been placed in admissibility proceedings, as opposed to being admitted into the United States and placed in removal proceedings. That would have been Margulis's situation had he been "caught" returning from one of his previous foreign trips and placed in admissibility proceedings. *Sanchez* would entitle him to seek in his current removal proceeding the waiver of inadmissibility that he could have sought in an admissibility proceeding upon return from one of those earlier trips.

The Board can reexamine, and if it wants overrule, a precedent, but it didn't do that in this case. It ignored it. This is not permissible. An agency must give reasons for abandoning a precedent. *National Cable & Telecommunications Ass'n v. Brand X Internet Services*, 545 U.S. 967, 981–82 (2005);

*Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Automobile Ins. Co.*, 463 U.S. 29, 42 (1983).

The Board cited our decision in *Klementanovsky v. Gonzales*, *supra*, for the proposition that "because [Margulis] is properly charged as a deportable alien rather than an alien seeking admission, he is not eligible for a waiver of inadmissibility nunc pro tunc under section 212(h)." This is a throwback to the Board's discussion of "entry." Not having "departed" from the United States (in the Board's view), Margulis could not be "admitted" to the United States and therefore could not ask for the waiver. But *Klementanovsky* is not about nunc pro tunc, and though it does note that "a waiver of inadmissibility under § 212(h) may be granted *nunc pro tunc* to retroactively cure grounds of inadmissibility at the time of entry," 501 F.3d at 790, Klementanovsky himself had not, so far as appears, ever left the United States after first entering it. He was not claiming to be a returning alien. The citation of the case by the Board is incomprehensible, and the government's argument in its brief that *Klementanovsky* displaces *Sanchez* is nonsense.

The Board has not provided a rational basis for its decision. The petition for review is therefore granted and the case returned to the Board for further proceedings.

But we should note that our reference to "further proceedings" is of more than ordinary importance. Our grant of the petition for review is not a ruling that the petitioner is entitled to the waiver that he's seeking. That remains to be seen. After the case was argued to us, the Board, in *Matter of Rivas*, 26 I. & N. Dec. 130 (BIA 2013), overruled *Sanchez*, holding that "granting a [212(h)] waiver nunc pro tunc would violate the plain language of the statute and the in-

tent of Congress." *Id.* at 134. As the overruling was based on a statutory interpretation, there may be room for argument to a reviewing court that the *Rivas* decision is erroneous. There is also the unanswered question whether the Board would or should apply the decision retroactively. These are matters for the Board to decide in the first instance on remand.

Moreover, although the Board did not explain the basis for its ruling that the petitioner had not "departed" from the United States and therefore had not been seeking admission to this country (a prequisite to waiver) when he returned from his blink-of-the-eye visit to Canada, there may be an explanation that the Board could offer. We noted that when Congress eliminated "entry" it left untouched a regulation that defined "depart" broadly enough to encompass Margulis's abortive trip to Canada. But the statute did more than just eliminate entry; it substituted admission. So now a petitioner in Margulis's situation, re-entering the United States when before departing he had committed a crime that had made him deportable, must to qualify for the waiver obtain "admission" to the United States, defined as "lawful entry … after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A); see *id.*, § 1101(a)(13)(C)(v). The immigration officers did not treat Margulis as a lawful entrant, for they placed him immediately in removal proceedings—which is to say they deemed him already present in the United States, since if they had thought he was seeking admission they would have placed him in admissibility proceedings rather than in removal proceedings. He had departed from the United States, but by not qualifying for admission was deemed ineligible for a waiver that was conditioned on his returning as a lawful entrant.

*In re R-D-*, 24 I. & N. Dec. 221 (BIA 2007), supports this approach, but only in dictum. The Board's opinion in this case cites *R-D-* but prefaces the citation by "compare," leaving unclear what weight the Board meant to give to that decision. Whether the Board meant to embrace the reasoning sketched above cannot be determined from its cryptic reference to *R-D-* and *Matter of T-*.

PETITION FOR REVIEW GRANTED, CASE REMANDED.