PRYOR, Circuit Judge:
The main question presented by this petition for review is whether a removable alien is eligible for a waiver of inadmissability, under section 212(h) of the Immigration and Nationality Act, 8 U.S.C. § 1182(h), if he remains within the United States, but fails to apply for an adjustment of his status, 8 U.S.C. § 1255. Sammir Poveda, a lawful permanent resident, petitions for review of a decision of the Board of Immigration Appeals that vacated an immigration judge’s decision that Poveda is eligible for a hardship waiver under section 212(h). The immigration judge had determined that Poveda is eligible for a hardship waiver based on a misreading of our decisions in Lanier v. United States Attorney General, 631 F.3d 1363 (11th Cir.2011), and Yeung v. INS, 76 F.3d 337 (11th Cir.1995). Poveda argues that, as an alien lawfully present in the United States, he need not concurrently apply for an adjustment of his status, but we must defer to the contrary interpretation of section 212(h) by the Board. See 8 U.S.C. § 1182(h); 8 C.F.R. § 1245.1(f). And we reject Poveda’s argument that the interpretation by the Board would violate his right to equal protection as a component of due process of law, U.S. Const. Amend. V. Poveda’s alternative argument that he qualifies as an inadmissable alien, 8 U.S.C. § 1101(a)(13), eligible for a hardship waiver under section 212(h) also fails. We deny Poveda’s petition for review.
I. BACKGROUND
Sammir Poveda is a native and citizen of Nicaragua. After his admittance into the United States, Poveda adjusted his status in 2002 to that of an alien lawfully admitted for permanent residence under the Nicaraguan Adjustment and Central American Relief Act of 1997, Pub. L. No. 105-100, 111 Stat. 2160, 2193 (1997). In 2007, a Florida court convicted Poveda of the offense of battery on a child by bodily fluids, see Fla. Stat. Ann. § 784.085(1), and soon afterward, the Department of Homeland Security commenced removal proceedings against him, see 8 U.S.C. §§ 1227(a)(2)(A)(i), 1227(a)(2)(A)(iii), 1227(a)(2)(E)(i).
*1172 Poveda applied for a hardship waiver of removal under section 212(h). An immigration judge determined that Poveda was removable, but granted Poveda’s application for a waiver under section 212(h) by interpreting our decisions in Lanier and Yeung to mean that an alien is eligible for a hardship waiver regardless of whether the alien has concurrently applied for an adjustment of status. The government appealed that decision to the Board of Immigration Appeals.
The Board vacated the immigration judge’s decision, based on the decisions of two of our sister circuits, see Cabral v. Holder, 632 F.3d 886 (5th Cir.2011); Klementanovsky v. Gonzales, 501 F.3d 788 (7th Cir.2007), that an alien must “submit an application for a 212(h) waiver concurrently with an application for a visa, admission, or adjustment of status.” The Board also concluded that the immigration judge had misread our precedents. The Board reasoned that Lanier stood “for the proposition that an alien who adjusted to lawful permanent resident status is not necessarily barred from seeking a waiver under section 212(h) ... as a result of having been convicted of an aggravated felony,” and that the reference to Yeung in Lanier was intended to explain only “that a 212(h) waiver may be granted by an Immigration Judge in removal proceedings as opposed to being a form of relief restricted to aliens seeking physical entry into the United States.” Because it concluded that Poveda was ineligible for the hardship waiver, the Board ordered the removal of Poveda to Nicaragua.
II. STANDARDS OF REVIEW
“This Court reviews only the decision of the [Board], except to the extent that it expressly adopts the [immigration judge’s] opinion.” Nreka v. U.S. Att’y Gen., 408 F.3d 1361, 1368 (11th Cir.2005) (internal quotation marks omitted). “To the extent that the [Board’s] ... decision was based on a legal determination, review is de novo.” Id. Although we lack jurisdiction “to review a decision of the Attorney General to grant or deny a waiver,” 8 U.S.C. § 1182(h), “[w]e have jurisdiction to review the legal question of whether [Poveda] is statutorily eligible to apply for a § 212(h) waiver.” Lanier, 631 F.3d at 1365 n. 2. And, we have jurisdiction to consider constitutional challenges to the interpretation by the Board of the statute it administers. See 8 U.S.C. § 1252(a)(2)(D). Although “[w]e review the [Board’s] statutory interpretation de novo,” we “will defer to the [Board’s] interpretation of a statute if it is reasonable and does not contradict the clear intent of Congress.” Jaggernauth v. U.S. Att’y Gen., 432 F.3d 1346, 1350 (11th Cir.2005). “[J]udicial deference to the Executive Branch is especially appropriate in the immigration context.” INS v. Aguirre-Aguirre, 526 U.S. 415, 425, 119 S.Ct. 1439, 1445, 143 L.Ed.2d 590 (1999). “We review constitutional challenges ... de novo,” Lapaix v. U.S. Att’y Gen., 605 F.3d 1138, 1143 (11th Cir.2010), and “federal classifications such as those at issue in § 212 of the [Act] are subject to minimal scrutiny under the rational basis standard of review, and are valid if not arbitrary or unreasonable.” Yeung, 76 F.3d at 339. “Under the rational basis standard, the [alien] bears the burden of establishing that the government regulation is arbitrary or unreasonable, and not rationally related to the government’s purpose.” Id.
III. DISCUSSION
We divide our discussion in two parts. First, we discuss whether Poveda, as an alien within our borders, is eligible for a hardship waiver without concurrently applying for an adjustment of his status. Second, we discuss whether Poveda is an applicant for admission.

*1173
A. As an Alien Within Our Borders, Poveda is Ineligible for a Hardship Waiver Unless He Applies for an Adjustment of His Status.

“Section 212(h)(1)(B) of the [Act] gives the Attorney General the discretion to waive the immigration consequences of certain criminal convictions if a person demonstrates that [his or] her removal or denial of admission would result in extreme hardship to a U.S. citizen family member.” Lanier, 631 F.3d at 1365. On its face, the waiver is available only to aliens charged with inadmissibility in removal proceedings and only when the Attorney General has agreed to grant an alien’s application for a visa, for admission, or for an adjustment of status:
The Attorney General may, in his discretion, waive the application of [certain grounds of inadmissibility] ... if ... the Attorney General, in his discretion, and pursuant to such terms ... as he may by regulations prescribe, has consented to the alien’s applying or reapplying for a visa, for admission to the United States, or adjustment of status.
8 U.S.C. § 1182(h).
Although section 212(h) mentions no grounds of deportability and, on its face, applies only to aliens charged with inadmissibility, the Board earlier took the position that a lawful permanent resident present in the United States could apply for a waiver under section 212(h) during deportation proceedings so long as he “departed], return[ed], and then applied] for a waiver.” Klementanovsky, 501 F.3d at 793. See, e.g., Matter of Sanchez, 17 I. & N. Dec. 218, 222-24 (BIA 1980). In Yeung, we ruled that the position of the Board that an alien is ineligible for the waiver “simply by virtue of his failure to depart and reenter” was “to recognize a distinction that can only be characterized as arbitrary, and that is without a fair and substantial relation to the object of the legislation.” Yeung, 76 F.3d at 340 (internal quotation marks omitted). We remanded that matter to the Board to “afford the Attorney General, in whom Congress has vested the authority to rule on legal questions arising from the immigration law, the opportunity to reconsider and construe § 212(h) consistent with the competing statutory, constitutional, and policy interests at stake.” Id. at 341.
In the wake of Yeung, the Board has “abandoned” its previous position. Klementanovsky, 501 F.3d at 794. The Board now interprets section 212(h) to provide that the Attorney General may grant a waiver in two situations: first, the Attorney General may provide a waiver to an alien at the border who seeks admission, including an alien who has departed the United States after committing a deportable offense, so long as the alien remains outside our borders while applying for relief; and second, the Attorney General may provide a waiver to an alien within our borders after his conviction for a deportable offense so long as he applies for an adjustment of status. Cf. Matter of Abosi, 24 I. & N. Dec. 204, 205 (BIA 2007). And federal regulations provide that, for aliens who apply for a hardship waiver while within the United States, an application for an adjustment of status “shall be the sole method of requesting the exercise of discretion under section 212 ... (h)....” 8 C.F.R. § 1245.1(f). See Abosi, 24 I. & N. Dec. at 205 n. 2 (interpreting the regulation and distinguishing aliens seeking admission, who need not apply for an adjustment of status in conjunction with a request for a waiver under section 212(h), and aliens in the United States who must apply for status adjustment).
Poveda argues that he is statutorily eligible for a waiver. He contends that our decisions in Lanier and Yeung foreclose the current position of the Board that an *1174 alien who remains within the United States must apply for an adjustment of status to obtain a waiver under section 212(h). We disagree.
Poveda’s reliance on Lanier is misplaced. In that decision, we construed the following provision of section 212(h), which is not at issue in this petition for review: “No waiver shall be granted under this subsection in the case of an alien who has previously been admitted to the United States as an alien lawfully admitted for permanent residence if ... since the date of such admission the alien had been convicted of an aggravated felony.” 8 U.S.C. § 1182(h). We concluded that “the plain language of [the statute] provides that a person must have physically entered the United States, after inspection, as a lawful permanent resident in order to have ‘previously been admitted to the United States as an alien lawfully admitted for permanent residence.’ ” Lanier, 631 F.3d at 1366-67. And we determined “that the statutory bar to relief does not apply to those persons who ... adjusted to lawful permanent resident status while already living in the United States.” Id. at 1367. We did not decide whether the alien felon was otherwise eligible to receive a waiver under section 212(h); we instead remanded the matter to the Board to consider that question. Id.
Poveda’s reliance on Yeung fares no better. That decision concerned an interpretation of section 212(h) that the Board has since “backed away from.” Klementanovsky, 501 F.3d at 793. In Yeung, the Board “held out the possibility that a § 212(li) waiver would be available for a deportee who had departed and returned to this country subsequent to his conviction.” Id. (internal quotation marks omitted). The Board now construes section 212(h) to allow only those who seek readmission from outside of our borders or those within our borders who apply for an adjustment of status to obtain a hardship waiver. Id. at 793-94. That interpretation is more consistent with the plain language of section 212(h) than the earlier interpretation by the Board that we addressed in Yeung. Id.
The dissent’s contention that the Board has not abandoned its previous position in Yeung misunderstands the current state of the governing law, especially the changes wrought by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996. The previous position of the Board is no longer tenable in the light of the 1996 Act, which created an “upheaval in immigration law,” Adefemi v. Ashcroft, 358 F.3d 828, 831 (11th Cir.2004). Before Congress enacted the 1996 Act, whether an alien had “entered” the United States affected his legal status. An alien could achieve “entry” by physically crossing into United States territory regardless of whether the alien crossed legally or evaded inspection. See Leng May Ma v. Barber, 357 U.S. 185, 188-90, 78 S.Ct. 1072, 1074-75, 2 L.Ed.2d 1246 (1958). Nevertheless, an alien in custody or temporarily paroled “pending determination of his admissibility” had not entered the United States even though he was “physically within the United States.” Id. Whether an alien had “entered” mattered because “important immigration provisions were keyed to an alien’s ‘entry.’ ” Assa’ad v. U.S. Att’y Gen., 332 F.3d 1321, 1328 (11th Cir.2003). Aliens who had not yet entered the United States were subject to “exclusion” hearings. Landon v. Plasencia, 459 U.S. 21, 25, 103 S.Ct. 321, 325, 74 L.Ed.2d 21 (1982). And aliens who had entered the United States, with or without inspection, were subject to “deportation.” Id.
No longer does “the procedure by which an alien [is] removed from the United States turn[] on the physical location of the alien.” Assa’ad, 332 F.3d at 1326. *1175 “The distinction now turns on status rather than location.” Id. at 1326 n. 10. “[A]n alien in the United States who has been admitted is subject to deportability grounds, see INA § 237(a), 8 U.S.C. § 1227(a), while an alien who has not, regardless of his or her location, is subject to inadmissibility grounds, INA § 212(a), 8 U.S.C. § 1182(a).” Id.
The 1996 Act affected the legal status of a lawful permanent resident who returned from a trip abroad. Under former section 101(a)(13) of the Immigration and Nationality Act, a returning permanent resident alien was not regarded as making “an entry” into the United States so long as the alien’s presence abroad was not “intended or reasonably ... expected.” Rosenberg v. Fleuti, 374 U.S. 449, 452, 83 S.Ct. 1804, 1807, 10 L.Ed.2d 1000 (1963) (citing former 8 U.S.C. § 1101(a)(13)). In Fleuti, the Supreme Court held that a lawful permanent resident’s “innocent, casual and brief’ excursion was not sufficiently “interruptive” of the alien resident’s status to be “intended” and would not be deemed an “entry.” Id. at 462, 83 S.Ct. at 1812. In other words, a lawful permanent resident who made an “innocent, casual, and brief’ excursion abroad was deportable, but not excludable. Id. The 1996 Act altered the law for permanent residents who returned to the United States after an “innocent, casual, and brief excursion” abroad. To be sure, a lawful permanent resident who returns from abroad ordinarily is not considered an applicant for admission. 8 U.S.C. § 1101(a)(13)(C). But a lawful permanent resident who commits certain crimes before departure is considered an applicant for admission upon his return regardless of the length of his trip. 8 U.S.C. § 1101(a)(13)(C)(v). Had Poveda left the country after committing his sexual offense, he would have been treated as an applicant for admission upon his return to this country. Id.
The dissent’s assertion that “aliens who travel abroad following their conviction and who then face deportation can seek the waiver, even if they need not overcome a ground of inadmissability during their removal proceedings” ignores the changes wrought by the 1996 Act. A non-resident alien, who leaves this country and then returns, may be removed and is subject to grounds of inadmissability, whether or not he committed a crime before traveling abroad. 8 U.S.C. § 1101(a)(13)(A). And a lawful permanent resident who travels abroad following a conviction for certain crimes will also be treated as an applicant for admission upon his return. Id. § 1101(a)(13)(C)(v). Contrary to the dissent’s assertion, a lawful permanent resident who commits a crime, travels abroad, and returns is treated like any other alien seeking admission at our border. That the government may choose to charge a returning lawful permanent resident with grounds of deportability instead of grounds of inadmissability does not change that the lawful permanent resident is subject to grounds of inadmissability upon his return to this country under section 1101(a)(13)(C)(v). See, e.g., Matter of Guzman Martinez, 25 I. & N. Dec. 845, 848 n. 4 (BIA 2012) (“If a lawful permanent resident is permitted to reenter the United States after inspection by an immigration officer but is thereafter determined to have engaged in illegal activity before reentry, the alien may be subject to a charge of deportability ... for having been inadmissible at the time of a prior entry.”). Thus, a waiver of inadmissability under section 212(h) is available to him. This regime is different from the system described in Yeung that existed before 1996, where a lawful permanent resident who committed a crime before embarking on a trip abroad was eligible to receive a section 212(h) waiver even though he was not considered an applicant for admission *1176 upon his return to this country so long as his trip was “innocent, casual, and brief.”
The dissent labors under the misapprehension that there are aliens who are eligible for a waiver under section 212(h) even if they have not sought admission at the border or applied to adjust their status. But the dissent can cite no decision of the Board after 1996 — no decision in the last 16 years — which states that an alien may receive a waiver under section 212(h) without applying for admission or for an adjustment of status. Indeed, we are unaware of any decision that even discusses that proposition.
The dissent asserts that the opinion of the Board in this matter proves that the Board continues to adhere to its old approach, but just the opposite is true. The opinion does not state that Poveda was eligible to receive the waiver so long as he left and returned, regardless of whether he faced a ground of inadmissability. Indeed, the opinion provides no citation to a Board precedent decided before 1996 and, of course, no citation to Sanchez. Instead, the opinion cites Abosi to explain that “a returning legal permanent resident seeking to overcome a ground of inadmissibility is not required to apply for adjustment of status in conjunction with a waiver of inadmissability.” And the opinion cites Klementanovsky and Cabral to explain that, because Poveda was not seeking admission, he was required to apply for an adjustment of status “in conjunction with a waiver of inadmissability.” If the Board truly continues to adhere to its old approach, it is puzzling that it did not explain that Poveda could have been eligible for the waiver, even if he did not face a ground of inadmissability, so long as he departed and returned.
The interpretation of the immigration statutes by the Board is “due Chevron deference where appropriate. Under Chevron, where Congress in a statute has not spoken unambiguously on an issue, the interpretation of the statute by an agency entitled to administer it is entitled to deference so long as it is reasonable.” Chen v. U.S. Att’y Gen., 565 F.3d 805, 809 (11th Cir.2009) (internal quotation marks and citations omitted); see Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 865, 104 S.Ct. 2778, 2793, 81 L.Ed.2d 694 (1984). “The degree of deference is especially great in the field of immigration.” Chen, 565 F.3d at 809 (internal quotation marks omitted); Aguirre-Aguirre, 526 U.S. at 425, 119 S.Ct. at 1445. Because section 212(h) is silent about whether an alien within our borders may obtain a hardship waiver without concurrently applying for an adjustment of status, we must consider whether the new interpretation of section 212(h) by the Board is reasonable.
The new interpretation by the Board of section 212(h) — that an alien within the United States must apply for an adjustment of his status to receive a hardship waiver — is reasonable. See Cabral, 632 F.3d at 891; Klementanovsky, 501 F.3d at 794. Although section 212(h) permits the Attorney General to waive certain grounds of inadmissibility, not grounds of deportability, an alien within the United States who applies for an adjustment of status “is assimilated to the position of an alien outside the United States seeking entry as an immigrant” because an alien may adjust his status only if he is admissible. Charles Gordon et al., Immigration Law and Procedure § 51.03[3] (rev. ed. 2001); Cabral, 632 F.3d at 891; Jankowski-Burczyk v. INS, 291 F.3d 172, 175 n. 2 (2d Cir.2002); see 8 U.S.C. § 1255(i)(2)(A) (stating that an alien may obtain an adjustment in status only if he “is admissible to the United States .... ”). The Board reasonably concluded that the Attorney General may grant a hardship waiver to an alien in that assimilated position.
*1177 Two of our sister circuits likewise have held that the new interpretation by the Board of section 212(h) is reasonable. In Cabral, the Fifth Circuit upheld the decision of the Board that an alien was ineligible to apply for a hardship waiver because he remained within the United States and had not applied for an adjustment of status, 632 F.3d at 891, and in Klementanovsky, the Seventh Circuit upheld the same kind of decision, 501 F.3d at 794.
Poveda argues, and the dissent agrees, that there is no rational basis for the Board to differentiate between aliens, like Poveda, who have failed to travel and aliens who have self-deported, but the government responds that Congress has rationally distinguished between aliens who are inadmissible and aliens who are deportable. We agree with the government.
Poveda and the dissent misconstrue the classifications made by Congress and the Board. The distinction between an alien who is ineligible for a hardship waiver and an alien who is eligible for the waiver is not “lack of international travel.” Congress and the Board instead have differentiated “between those criminal aliens who seek to be admitted to the United States, and those criminal aliens who are being deported from the United States.” Klementanovsky, 501 F.3d at 791-92. The former category of aliens is eligible to apply for a hardship waiver while the latter category is ineligible to apply for a waiver. Id. at 792.
The new classifications by Congress and the Board are different from the state of the law before 1996, when a lawful permanent resident could receive a hardship waiver only if he departed. See, e.g., Matter of Balao, 20 I. & N. Dec. 440, 446 (BIA 1992). After 1996, a lawful permanent resident may obtain the waiver only if he is an applicant for admission or assimilated to the position of an applicant for admission by applying for an adjustment of status. In other words, a waiver of inadmissability is available only to waive grounds of inadmissability.
“Congress has plenary power to pass legislation concerning the admission and exclusion of aliens,” and “federal classifications that distinguish among groups of aliens are subject only to rational basis review.” Resendiz-Alcaraz v. Ashcroft, 383 F.3d 1262, 1271 (11th Cir.2004). “Rational basis review is not demanding. Rather, a legislative classification subject to rational basis review is accorded a strong presumption of validity, and review of enactments subject to the rational basis standard must be a paradigm of judicial restraint.” Id. (internal quotation marks and citations omitted). These types of “legislative classifications must be upheld against an equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification, and the burden lies on the [alien] to demonstrate that no conceivable basis exists to support the classification.” Id. at 1271-72 (internal quotation marks and citations omitted). “Our job is not to determine the ultimate wisdom of Congress’ decision to deny discretionary relief .... [R]ational-basis review in equal protection analysis is not a license for courts to judge the wisdom, fairness, or logic of legislative choices.” Moore v. Ashcroft, 251 F.3d 919, 926 (11th Cir.2001) (internal quotation marks omitted).
There are at least five rational bases for the classifications defined by Congress and the Board. First, at least in cases where an alien must apply for the waiver while outside the United States, “Congress might have wanted to ensure that dangerous people, including those convicted of crimes ..., remain outside the United States while their applications for discretionary relief are being considered.” Ca *1178 bral, 632 F.3d at 893; Klementanovsky, 501 F.3d at 792-93. Second, in these cases, “Congress might have wanted aliens seeking such waivers to do so from outside the United States in order to discourage them from attempting to ‘fly under the radar’ of the immigration authorities in the event that the discretionary waiver is ultimately denied.” Cabral, 632 F.3d at 893; Klementanovsky, 501 F.3d at 793. Third, in these cases, “Congress might have rationalized that granting a waiver to those who self-deport and seek readmission at the borders provides an incentive for such aliens to voluntarily depart at their own expense.” Cabral, 632 F.3d at 893; Klementanovsky, 501 F.3d at 793. Fourth, in cases where an alien either remains outside our borders or applies for an adjustment of status while within our borders, the alien must provide immigration authorities with information about his whereabouts and “immigration authorities [gain] a second bite at the apple to intercept and consider otherwise unlawful aliens.” Cabral, 632 F.3d at 893; Klementanovsky, 501 F.3d at 793. Fifth, Congress might have wanted to punish those who were given the opportunity to become a lawful permanent resident and “repaid that act by commencing a life of crime” by requiring them to self-deport before the Attorney General considers their request for a hardship waiver. Klementanovsky, 501 F.3d at 792.
Chuang v. U.S. Att’y Gen., 382 F.3d 1299, 1304 (11th Cir.2004), is instructive. In that decision, we reviewed the denial of an alien’s request for relief from deportation under former section 212(c) of the Immigration and Nationality Act, and the alien argued that the “bar against INA § 212(c) relief for deportable criminal aliens, and its allowance of § 212(c) relief for excludable aliens, violate[d] his right to Equal Protection under the Due Process Clause of the Fifth Amendment.” Id. at 1303. We rejected the alien’s argument and concluded that the distinction between a deportable and an excludable alien’s eligibility for relief under section 212(c) was rational:
A rational and indeed sensible reason can readily be assigned to Congress’s more lenient treatment of excludable as distinct from deportable aliens: it creates an incentive for deportable aliens to leave the country — which is after all the goal of deportation — without their having to be ordered to leave at the government’s expense. To induce their voluntary departure, a little carrot is dangled before them, consisting of the opportunity to seek a waiver should they seek to return to the country and by doing so trigger exclusion proceedings.
This equal protection issue must not be confused with that in Francis v. INS, 532 F.2d 268 (2d Cir.1976), where the government was taking the irrational position that an alien who after coming to the United States had taken a trip abroad and returned and was then ordered deported was entitled to more consideration than one who had never taken a foreign trip after coming to the United States. That is different from the situation of an alien who seeks discretionary relief while he is still outside the United States.
Id. at 1303-04 (quoting LaGuerre v. Reno, 164 F.3d 1035, 1041 (7th Cir.1998)). The Board now makes a similar distinction between removable and inadmissible aliens, and that position is rational for the reasons we articulated in Chuang.

B. So Long as He Remains Within the United States, Poveda is Not an Applicant for Admission.

Poveda argues, in the alternative, that he is eligible for a hardship waiver because he is actually an applicant for admission. Poveda contends that an alien *1179 lawfully admitted for permanent residence “shall not be regarded as seeking an admission into the United States for purposes of the immigration laws” unless that alien has committed ■ certain crimes. 8 U.S.C. § 1101(a)(13)(C)(v). Poveda contends that, when an alien commits one of the designated crimes, section 1101(a)(13)(C)(v) mandates that the alien be considered an applicant for admission. Poveda maintains that, because he has committed one of the designated crimes, he is an applicant for admission who is eligible for a hardship waiver.
The Fifth Circuit in Cabral — for good reason — rejected this exact argument as “utterly without merit.” Cabral, 632 F.3d at 892. The Immigration and Nationality Act defines the terms “admission” and “admitted” to mean “the lawful entry of the alien into the United States after inspection and authorization by an immigration officer.” 8 U.S.C. § 1101(a)(13)(A). The latter portion of the statute “governs the status of [lawful permanent residents] returning to the United States from a trip abroad.” Onwuamaegbu v. Gonzales, 470 F.3d 405, 410 (1st Cir.2006). The statute clarifies that a permanent resident alien who returns from abroad is not regarded as seeking an admission each time he reenters the United States unless the permanent resident has taken certain actions:
(C) An alien lawfully admitted for permanent residence in the United States shall not be regarded as seeking an admission into the United States for purposes of the immigration laws unless the alien—
(i) has abandoned or relinquished that status,
(ii) has been absent from the United States for a continuous period in excess of 180 days,
(iii) has engaged in illegal activity after having departed the United States,
(iv) has departed from the United States while under legal process seeking removal of the alien from the United States, including removal proceedings under this chapter and extradition proceedings,
(v) has committed an offense identified in section 1182(a)(2) of this title, unless since such offense the alien has been granted relief ..., or
(vi) is attempting to enter at a time or place other than as designated by immigration officers or has not been admitted to the United States after inspection and authorization by an immigration officer.
8 U.S.C. § 1101(a)(13)(C). Poveda’s argument that he is an applicant for admission ignores the precept that, “in construing a statute, we do not look at one word or term in isolation, but instead we look to the entire statutory context,” Durr v. Shinseki, 638 F.3d 1342, 1349 (11th Cir.2011) (internal quotation marks and alteration omitted). The general rule of admissibility is provided in section 1101(a)(13)(A), and an exception is provided in section 1101(a)(13)(C).
Poveda is not “seeking an admission,” 8 U.S.C. § 1101(a)(13)(C), because he has not attempted to reenter the United States after committing a crime, id. § 1101(a)(13)(A). Poveda is “already lawfully present in the United States.” Cabral, 632 F.3d at 892. And section 1101(a)(13)(C) is not triggered when a permanent resident does not leave. See Cabral, 632 F.3d at 892; cf. Vartelas v. Holder, — U.S. —, 132 S.Ct. 1479, 1484-85, 182 L.Ed.2d 473 (2012) (explaining that “lawful permanent residents returning ... may be required to seek an admission into the United States” if they take any of the *1180 actions enumerated in section 1101(a)(13)(C)) (internal quotation marks and alteration omitted); Richardson v. Reno, 162 F.3d 1338, 1346-47 (11th Cir.1998), vacated by 526 U.S. 1142, 119 S.Ct. 2016, 143 L.Ed.2d 1029 (1999), reinstated in part by 180 F.3d 1311 (11th Cir.1999) (“IIRIRA also altered the rules for permanent resident aliens returning from abroad .... [The] new INA § 101(a)(13)(c) provides that ‘an alien lawfully admitted for permanent residence in the United States shall not be regarded as seeking an admission into the United States for purposes of the immigration laws unless the alien [takes certain actions].’ ”) (emphasis omitted); Onwuamaegbu, 470 F.3d at 410.
IV. CONCLUSION
Poveda’s petition for review is denied.
PETITION DENIED.