[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-14307

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

JOHN DOE,
a.k.a. Freddie Lee Davis, Jr.,
a.k.a. Frederick Davis,
a.k.a. Dave Davis,
a.k.a. Patrick Constantine Melbourne,
a.k.a. Patrick Melburn,
a.k.a. Joseph Gordon,
a.k.a. Ricardo Noel Jones,
a.k.a. Frank Victor Douglas,

a.k.a. Danny Keith Brooks,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 3:19-cr-00188-MMH-JBT-1

_____

Before ROSENBAUM, ABUDU, and TJOFLAT, Circuit Judges.

ROSENBAUM, Circuit Judge:

Defendant-Appellant John Doe's many aliases have made his name, like his nationality, a mystery. During one of his many encounters with immigration officials, Doe insisted, "Only God knows my name." Perhaps. But even so, Doe is a member of a class of noncitizens that 8 U.S.C. § 1227(a) describes. So when he willfully flouted removal orders, as a jury concluded he did, he violated 8 U.S.C. § 1253(a)(1).

Doe now appeals his convictions on three counts of violating section 1253(a)(1). That law criminally penalizes a noncitizen who willfully fails to leave the country after a final removal order "outstanding by reason of being a member of any of the classes described in [8 U.S.C. §] 1227(a) . . . ." 8 U.S.C. § 1253(a)(1). Subsections 1227(a)(1)–(6), in turn, list "classes" of aliens, describing

each "class" as "deportable."  But before subsections (1) through (6) identify the deportable "class[es]," section 1227(a)—entitled "Classes of deportable aliens"—prefaces those subsections by providing for the removal of "[a]ny alien . . . in and [lawfully] admitted to the United States . . . if the alien is within one or more of the following classes of deportable aliens:".

Based on this prefatory language from section 1227(a), at trial, Doe sought a jury instruction requiring the government to prove that, to be convicted of the crime under section 1253(a)(1), he had to have at some point been (lawfully) "admitted" to the country.  The district court denied that instruction.  The district court also denied Doe's motion for a judgment of acquittal on the same ground.  Doe now appeals.

This case presents an issue of first impression in the circuit courts: whether section 1253(a)(1)'s reference to the "classes described in" section 1227(a) incorporates that section's limited application to only noncitizens who are "in and admitted to the United States."  The district court didn't think so.  Based on the plain meaning of the statutory text and its statutory context in immigration law, we agree.  So we affirm.

## I.    BACKGROUND

### A.    Doe's Immigration History

The facts here are undisputed.  Doe's history with the immigration system dates to at least 1985, when he twice tried to enter the United States.  Under the names Freddie Lee Davis and Joseph

Gordon (and carrying fraudulent Jamaican and Bahamian documents, respectively), Doe sought to enter the United States through South Florida.  The first time, after he was placed in exclusion proceedings, Doe was permitted to withdraw his request for admission and left for Jamaica.  The second time, an immigration judge issued an order of exclusion and deportation for Doe.

Three years later, in 1988, immigration officials encountered Doe in Texas.  We don't know how he traveled there, and he has no record of lawful admission to the country.  After first claiming United States citizenship (and a birthplace of the U.S. Virgin Islands), Doe eventually admitted that he was not lawfully present in the country and said that he was born in the Bahamas.  Doe identified himself as Joseph Gordon, though he acknowledged using four other names as aliases and having been previously deported from the United States.  The Immigration and Naturalization Service ("INS") initiated deportation proceedings and charged Doe with violating the former Immigration and Nationality Act § 241(a)(2) by entering the country without inspection.  An immigration judge found that Doe was deportable as charged and ordered him deported to Jamaica.

### B.    Doe's Recent Failure to Depart

Decades later, in 2018, officials again took Doe into immigration custody—this time in Florida.  By now, Doe had a long list of known aliases.  In June 2018, Immigration and Customs Enforcement ("ICE") issued a "warrant of removal/deportation" for Doe, authorizing his removal without a hearing because of the still-

outstanding 1988 final deportation order. That October, ICE served Doe with a "warning for failure to depart." The warning informed Doe of the criminal penalties under 8 U.S.C. § 1253(a)(1) for obstructing his removal or not cooperating with the procedures for obtaining travel out of the country.

But that didn't persuade Doe to cooperate. Doe refused to participate or provide basic biographical information in a series of conversations with immigration officers and Jamaican consular officers who wanted to identify him and arrange for his travel to Jamaica. When an immigration officer tried to call Doe to attend one such meeting, Doe denied that "Freddie Davis" was his name. And when the officer asked what his name was, Doe proclaimed that "only God knows my name."

Then, in April 2019, Doe, in the presence of an immigration officer, got on the phone with a Jamaican consular officer. He first told them he had nothing to say. But he gave the immigration officer his name as "Ricardo Jones" while refusing to share information about his relatives. Two months later, in June, Doe insisted his name was "Freddie Davis" but declined to answer other questions. And in July, Doe did the same thing.

## C.    *The Indictment*

A few months later, a federal grand jury indicted Doe on three counts of violating 8 U.S.C. § 1253(a)(1) based on his conduct in April, June, and July of that year. Section 1253(a)(1) establishes criminal penalties for those who willfully disobey or hamper

removal orders that are issued because they are a "member of any of the classes described in" 8 U.S.C. § 1227(a).

Section 1227(a), as we've noted, is entitled "Classes of deportable aliens[.]" And it opens with a sentence authorizing the removal of particular noncitizens: "[a]ny alien . . . in and admitted to the United States shall . . . be removed if the alien is within one or more of the following classes of deportable aliens:". *Id.* § 1227(a). Then, subsections 1227(a)(1)–(6) identify certain classes and provide that each is "deportable."

As relevant here,[1] each count of the indictment alleged that Doe was a member of the class that section 1227(a)(1)(A) describes. Section 1227(a)(1)(A), in turn, says that any noncitizen "who at the time of entry . . . was within one or more of the classes of aliens inadmissible by the law existing at such time is deportable." The maximum penalty for violating section 1253(a)(1) by falling within section 1227(a)(1)(A) is four years' imprisonment.

---

[1] Each count of the indictment also alleged that Doe violated section 1253(a)(1) by being a member of the class that 8 U.S.C. § 1227(a)(2)(A)(iii) describes. That section makes any noncitizen who is "convicted of an aggravated felony at any time after admission . . . deportable." But during the trial, the district court concluded that, based on the text of section 1227(a)(2)(A)(iii), the government had to prove that Doe had been "admitted" for him to fall within the class that section describes. The United States acknowledged that it could not prove Doe had been lawfully admitted to the country, so the district court did not instruct the jury on the indictment as it alternatively charged violations of section 1253(a)(1) by reason of being a member of the class specified at section 1227(a)(2)(A)(iii). The government didn't appeal this ruling, and the district court's interpretation of section 1227(a)(2)(A)(iii) is not at issue on appeal.

### D.    District Court Proceedings and the Section 1253(a)(1) Dispute

This brings us to the heart of the case. Before trial, Doe submitted proposed jury instructions that purported to define the elements of a section 1253(a)(1) offense. Doe's proposed instructions required the government to prove that Doe had a removal order "outstanding by reason of [Doe's] being a member of the class of deportable aliens that includes an alien who was (a) in and admitted to the United States . . . ." And Doe proposed defining "[*a*]*dmission*' and '*admitted*' . . . as 'the lawful entry of the alien into the United States after inspection and authorization by an immigration officer."

In a memorandum supporting his proposed instructions, Doe argued that section 1253(a)(1)'s reference to section 1227(a) incorporates section 1227(a)'s prefatory sentence's restriction to noncitizens "admitted to the United States." The United States objected, responding that the "classes" section 1253(a)(1) references are those set out at the numbered subsections after section 1227(a)'s prefatory sentence, and they do not assume lawful admission.

At a pretrial hearing, the district court decided against Doe's proposed instruction, on the ground that the "classes" section 1253(a)(1) references does not include section 1227(a)'s "in and admitted" limitation.

Doe renewed his objection to the jury instruction after both sides rested at trial. The court overruled that objection. Doe then

moved for a judgment of acquittal on the ground that the government had not shown he had ever been lawfully admitted to the United States. The court denied that motion.[2]

The jury found Doe guilty on all three counts. Soon after, the court imposed a total sentence of 51 months in prison.

Doe now appeals.

## II.    STANDARD OF REVIEW

We review questions of statutory interpretation and the denial of a motion for judgment of acquittal de novo. *United States v. Zuniga-Arteaga*, 681 F.3d 1220, 1222-23 (11th Cir. 2012). We review for abuse of discretion a district court's refusal to give a requested jury instruction, but we review the legal correctness of a jury instruction de novo. *United States v. Mayweather*, 991 F.3d 1163, 1174 (11th Cir. 2021).

## III.    DISCUSSION

In his timely appeal, Doe argues that the district court erred by holding that section 1253(a)(1) applies to noncitizens who were never lawfully admitted. In Doe's view, section 1253(a)(1) covers only noncitizens who were admitted. Based on this theory, Doe contends that the district court erred in rejecting his proposed jury instruction and denying his motion for judgment of acquittal. We

---

[2] Doe also argued that the government had failed to prove that his obstruction of removal was willful. The district court rejected this argument, and Doe does not raise it on appeal.

disagree.  Doe's preferred reading of the statute conflicts with the text, so we reject his interpretation.

### A.    The text does not support Doe's reading of the statute.

On a question of statutory interpretation, we begin with the statutory text. *United States v. Garcon*, 54 F.4th 1274, 1277 (11th Cir. 2022) (en banc).  The text of sections 1253(a)(1) and 1227(a) is clear, and it does not support Doe's position.  Because the text is unambiguous, we also end our analysis with it. *See Nesbitt v. Candler Cnty.*, 945 F.3d 1355, 1358 (11th Cir. 2022).

8 U.S.C. § 1253(a)(1) applies to a noncitizen "against whom a final order of removal is outstanding by reason of being a member of any of the classes described in section 1227(a) of this title." 8 U.S.C. § 1253(a)(1).  Under section 1253(a)(1)'s plain text, then, we must consider section 1227(a)'s text to determine whether Doe falls within a "class[] described" in it.

Section 1227 begins with subsection (a), a single sentence that prefaces the list of classes that follows: "[a]ny alien . . . in and admitted to the United States shall . . . be removed if the alien is within one or more of the following classes of deportable aliens:". *Id.* § 1227(a).

Then, as relevant here, subsections 1227(a)(1) through (6) describe the referenced classes and state that each "is deportable." *Id.* (1)–(6).  And more specifically, the subsection at issue—section 1227(a)(1)(A)—then states in its entirety, "Any alien who at the time of entry or adjustment of status was within one or more of the

classes of aliens inadmissible by the law existing at such time is deportable." *Id.* (1)(A).

Directing us back to section 1227(a)'s prefatory language that includes the phrase "admitted to the United States," Doe contends that section 1253(a)(1)'s mention of "the classes described in section 1227(a)" covers only noncitizens who are "admitted to the United States." *Id.* § 1227(a). And to be sure, the statute defines "admitted" and "admission," for our purposes, as a noncitizen's "lawful entry . . . into the United States after inspection and authorization by an immigration officer." *Id.* § 1101(a)(13)(A). Then, noting that, by definition, a "class" necessarily shares some attribute, Doe points to section 1227(a)'s prefatory sentence and claims that the relevant shared attribute here is prior lawful admission to the country. In further support of this theory, Doe asserts that each of the groups subsections 1227(a)(1)–(6) define are limited to those who have been admitted to the country.

For several reasons, the statute's plain language and structure don't support Doe's reading. For starters, section 1253(a)(1) permits criminal penalties for noncitizens facing a removal order "by reason of being a member of any of the classes described" in section 1227(a). So regardless of the precise procedural pathway or statute that generates a given removal order, section 1253(a)(1) provides for criminal penalties if the "reason" for the order is the noncitizen's membership in one of the classes "described" in section 1227(a). Put another way, Doe asks us to hold that section 1253(a)(1) applies only if the relevant removal order traces directly

to section 1227(a).  That is, he essentially argues that section 1253(a)(1) applies to only those who can be removed as deportable under section 1227(a).

But that's not what section 1253(a)(1) says.  Section 1253(a)(1) doesn't restrict criminal penalties to noncitizens who face a removal "by reason of being deportable under section 1227(a)."  If Congress had wanted to limit section 1253(a)(1)'s penalties to only those who faced removal directly under 1227(a), "it could have easily said so." *See Ysleta Del Sur Pueblo v. Texas*, 596 U.S. 685, 705 (2022) (rejecting an alternative reading of a statute that the Supreme Court concluded Congress could have easily adopted if it had wanted to).  But section 1253(a)(1) employs the longer and more specific phrase, "by reason of being a member of any of the classes described in section 1227(a)."  And facing removal by "being deportable under section 1227(a)" and by "being a member of any of the classes described in section 1227(a)" mean different things.

Second, section 1227(a)'s single-sentence prefatory language—"Any alien . . . in and admitted to the United States shall, upon order of the Attorney General, be removed *if the alien is within one or more of the following classes of deportable aliens:*"—does not itself "describe[]" "classes of deportable aliens."  8 U.S.C. § 1227(a) (emphasis added).  Rather, it directs the reader to the list of classes sections 1227(a)(1)–(6) set forth after the prefatory sentence's colon, and only those sections "describe," *id.* § 1253(a)(1), the "classes of deportable aliens," *id.* § 1227(a).

Third, the phrase from section 1227(a)'s prefatory sentence that Doe claims defines a shared attribute of the classes—"in and admitted to the United States"—does not grammatically modify the word "classes" in section 1227(a). Grammarians (and the government) call the phrase "in and admitted to the United States" as used here a "postpositive modifier." That means the phrase modifies "only the nearest reasonable referent[]" preceding it in a sentence. *See Parm v. Nat'l Bank of Cal., N.A.*, 835 F.3d 1331, 1336 (11th Cir. 2016). The nearest reasonable referent to "in and admitted to the United States" comes immediately before that phrase in the statute—"any alien." Indeed, section 1227(a) reads, "Any alien (including an alien crewman) in and admitted to the United States shall . . . be removed . . . ." if the alien is in the following "classes" listed in section 1227(a)(1)–(6). 8 U.S.C. § 1227(a).

"[C]lasses" appears twenty-two words after "in and admitted to the United States." *Id.* So "in and admitted to the United States" modifies "any alien," not "classes of deportable aliens." As a result, section 1227(a) itself provides for the "removal" of "[a]ny alien" so long as the alien is both (1) "in and admitted to the United States" and (2) "within one of more of the following classes of deportable aliens." *Id.* Removal under section 1227(a) requires that both criteria are met, but the "in and admitted" criterion is grammatically and logically distinct from the "following classes" criterion.

Fourth, the "classes" in section 1227(a) are the same "classes" section 1253(a)(1) refers to because both sections use the word "classes." *Id.* §§ 1227(a), 1253(a)(1). Doe's interpretation falters

because both sections 1227(a) and 1253(a)(1) refer to "classes" in the plural, not singular. A single class must share a unifying feature—perhaps, that all its members were "admitted" to the United States. But multiple "classes" need not all share a defining attribute. Since section 1253(a)(1) directs us to look for multiple classes in section 1227(a)(1)–(6), we would not necessarily expect a single feature common to all of them.

In short, the text of sections 1253(a)(1) and 1227(a) is clear. It shows that section 1227(a)'s "in and admitted" language does not apply to the section 1227(a) "classes" section 1253(a)(1) refers to.

### B.    Caselaw does not support Doe's reading of the statutes.

Not only does the text not support Doe's reading, but Doe also cites no relevant caselaw that supports his position. He relies primarily on *United States v. Sarwar*, 353 F. App'x 347 (11th Cir. 2009).[3]

---

[3] Doe also attempts to distinguish his case from two of our sister circuits' interpretations of other statutes' incorporation of section 1227(a). *See Gonzalez-Gonzalez v. Ashcroft*, 390 F.3d 649 (9th Cir. 2004); *Valdiviez-Hernandez v. Holder*, 739 F.3d 184 (5th Cir. 2013) (per curiam). We do not rely on those cases here. Still, we note that in *Gonzalez-Gonzalez*, the court did not limit its reading of the other statute's reference to section 1227(a) to admitted aliens, so it is consistent with our conclusion about section 1253(a)'s text. *See Gonzalez-Gonzalez*, 390 F.3d at 652. As for *Valdiviez-Hernandez*, there, the Fifth Circuit held that 8 U.S.C. § 1228(b)'s expedited-removal procedure, which refers to section 1227(a)(2)(A)(iii), applied to the non-admitted noncitizen involved in the appeal. 739 F.3d at 191. And it did so even though section 1227(a)(2)(A)(iii)'s terms make any noncitizen who is convicted of an aggravated felony "after admission" "deportable." *See id*. The court explained that § 1228(b)'s

As an unpublished decision, it is "not binding authority and . . . 'persuasive only to the extent that a subsequent panel finds the rationale expressed in that opinion to be persuasive after an independent consideration of the legal issue.'" *Collado v. J. & G. Transp., Inc.*, 820 F.3d 1256, 1259 n.3 (11th Cir. 2016) (quoting *Twin City Fire Ins. Co. v. Ohio Cas. Ins. Co.*, 480 F.3d 1254, 1260 n. 3 (11th Cir. 2007)).

But more importantly, *Sarwar* lacks relevance here. There, the panel addressed another section 1253(a)(1) case. But the defendant was charged as a member of certain section 1227(a) classes that contained additional language requiring the noncitizen to have committed a crime "after admission." *Sarwar*, 353 F. App'x at 349–50. Given the text describing the classes, not surprisingly, the panel concluded these specific classes were limited to admitted noncitizens. *Id.* But the panel said nothing about whether a class like the one that section 1227(a)(1)(A) identifies—which doesn't contain this "after admission" language—is limited to admitted noncitizens.

Doe alternatively argues that the rule of lenity supports his position. Again, we disagree. The rule of lenity "applies only when, after consulting traditional canons of statutory construction,

expedited removal process is "a self-contained set of provisions for special treatment of aggravated felons." *Id.* So it "decline[d] to interpret the cross reference in § 1228(b) to aggravated felony crimes in § 1227(a)(2)(A)(iii) as a narrowing of the class of aliens subject to the expedited removal process." *Id.*

we are left with an ambiguous statute." *Shular v. United States*, 589 U.S. 154, 165 (2020) (quoting *United States v. Shabani*, 513 U.S. 10, 17 (1994)) (internal quotation marks omitted).  But here we see no ambiguity, so the rule of lenity does not apply.

In sum, Doe offers no persuasive caselaw to support his position.

### C.    *The structure of immigration law doesn't support Doe's reading of sections 1253(a)(1) and 1227(a).*

Looking beyond the statutes at issue, Doe also investigates the broader concepts of being "removable," "inadmissible," and "deportable" as immigration law defines those concepts, to bolster his position.  Specifically, he cites a definition of "removable" in 8 U.S.C. § 1229a(e)(2) that he suggests shows that only admitted noncitizens are "deportable"  That definition defines "removable" to mean, in relevant part, "in the case of an alien admitted to the United States, that the alien is deportable." *Id.* § 1229a(e)(2)(B). Because each of the "classes" section 1227(a) identifies declares its members "deportable," Doe posits that these "classes" are also limited to "admitted" noncitizens.  We disagree for three reasons.

First, as we've explained, section 1253(a)(1) directs us to consider "the *classes described* in section 1227(a)." *Id.* § 1253(a)(1) (emphasis added).  And the "class[]" that section 1227(a)(1)(A) describes is "[a]ny alien who at the time of entry or adjustment of status was within one or more of the classes of aliens inadmissible by the law existing at such time . . . ."  True, section 1227(a)(1)(A) says that anyone within that class "is deportable," but that doesn't make

deportability a part of the "class[]" that section 1227(a)(1)(A) describes.  Rather, "is deportable" states a consequence under section 1227(a)(1)(A) if a noncitizen falls within the "class[]" that the rest of section 1227(a)(1)(A) describes.

Second, section 1229a(e)(2) doesn't purport to define "deportable"; it defines "removable."  And to the extent that Doe argues section 1229a(e)(2)'s definition of "removable" suggests a meaning for "deportable" that excludes nonadmitted noncitizens, by its own terms, section 1229a(e)(2) limits the applicability of its definition of "removable" to only sections 1229a and 1229b.  *Id*. § 1229a(e) (stating the definitions in section 1229a(e) apply "[i]n this section and section 1229b").  In other words, section 1229a(e)'s definitions don't apply to sections 1253(a) or 1227.

And third, there's a reason why section 1229a(e)(2) limits the definition of "removable" and its tight link between admission and deportability to sections 1229a and 1229b.  It's a bit of a long story, but the short version is this:  Congress did not intend to constrict the concept of "deportable" to admitted aliens in all contexts, and it didn't do so in criminal proceedings like the one before us now.

To explain the longer version, we need to travel through some of modern immigration law's history.  Like Frankenstein's monster, modern immigration law was assembled piecemeal from quasi-dead bodies of law.  The result is a sometimes-confusing mashup of terms and meanings from different periods of immigration law.

Before 1996, noncitizens who were to be expelled or rejected from the country could be "deported" or "excluded." *Poveda v. U.S. Att'y Gen.*, 692 F.3d 1168, 1174 (11th Cir. 2012). And whether a noncitizen had "entered" the United States affected which immigration process applied to him—exclusion or deportation. Noncitizens could "enter" the United States by physically crossing into the country—even if they came in illegally and didn't go through inspection.[4] *Id.* A noncitizen who had "entered" the United States (even illegally) was subject to "deportation." *Id.* But a noncitizen who had not "entered" the United States faced "exclusion." *Id.* Under this regime, "deportable" meant a person who could undergo "deportation." And "deportation" came with more protections from government action for the immigrant than "exclusion." LARRY M. EIG, CONG. RSCH. SERV., 97-295 A, IMMIGRATION: NEW CONSEQUENCES OF ILLEGAL PRESENCE 1 (1997) ("exclusion proceedings . . . . are less favorable to the alien with respect to burden of proof and possible relief from removal.").

In 1996, though, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104–208, 110 Stat. 3009 (1996) ("IIRIRA") (codified as amended in scattered sections of 8 U.S.C.). Among other functions, the IIRIRA, replaced both exclusion and deportation procedures with a new

---

[4] But noncitizens who were in custody or temporarily paroled "pending determination of . . . admissibility" were not considered to have "entered" the country, even though they were physically present within it. *Poveda*, 692 F.3d at 1174.

unified procedure called "removal." IIRIRA § 304 (codified at 8 U.S.C. § 1229a).

One key change that came with this new "removal" process saw our immigration system move from being location-based (whether a noncitizen had "entered" the United States) to being status-based (whether a noncitizen is "admitted" to the United States). *Poveda*, 692 F.3d at 1175. Before, noncitizens who had entered the country illegally without being admitted were "deportable."[5] That meant they received the greater protections of "deportation" rather than those of "exclusion." *See* EIG, *supra*, at 1. But migrants who had not entered the country at all (meaning they weren't illegally here), would not get these protections. In this way, the old system rewarded those who entered the country illegally.

With the new unified IIRIRA "removal" process, in general, only noncitizens who have been "admitted"—that is, who lawfully entered the country—receive greater protections from government action. For instance, to avoid removal, noncitizens who haven't been admitted bear the burden of showing "clearly and beyond doubt" that they are entitled to admission and are not inadmissible. 8 U.S.C. § 1229a(c)(2)(A). In contrast, those who have been admitted must show only "by clear and convincing

---

[5] The same year but before the IIRIRA, Congress made illegal entrants "excludable" with the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104–132, § 414, 110 Stat. 1214 (1996). The IIRIRA built on this change by placing illegal entrants and those who have never entered the country in the same "not admitted" category for the new unified removal process it ushered in. *See* 8 U.S.C. § 1229a.

evidence[,]" a less burdensome standard, that they are "lawfully present in the United States pursuant to a prior admission." *Id.* (B). Then once an admitted noncitizen clears that hurdle, section 1229a burdens the *government* with showing that the noncitizen falls into a category that makes him "deportable" and thus removable, and the *government, not the alien,* must make this showing "by clear and convincing evidence." *Id.* (3)(A).

Still, the IIRIRA did not fully reinvent the wheel in creating the new "removal" process. It borrowed from the old "deportation" system most of the grounds that make an admitted noncitizen removable. *Compare* 8 U.S.C. § 1227(a) *with* 8 U.S.C. § 1251(a) (1994). Specifically, 8 U.S.C. §§ 1229a and 1229b incorporated preexisting law (now section 1227(a)) to identify those admitted noncitizens who are subject to removal. As section 1229a(e)(2) shows, we still refer to these borrowed criteria as the reasons a noncitizen can be "deportable." And to reflect that the "deportable" standards would govern only an admitted noncitizen's removal, Congress rewrote section 1227(a)'s prefatory sentence to read "any alien . . . in and admitted to the United States shall . . . be removed if the alien is within one . . . of . . . the following classes of deportable aliens:". IIRIRA § 301(d)(1).

But in bringing removal to life, Congress did not decide to kill all other aspects of the immigration system. As relevant here, Congress left from the old deportation regime the criminal penalties for noncitizens who fail to leave the country after an order of what is now called removal. The criminal penalties at 8 U.S.C. §

1253(a)(1), which Doe now faces, were previously at 8 U.S.C. §
1252(e) (1994). These criminal penalties, before Congress enacted
the IIRIRA, applied to all who fell into the classes of deportable
aliens, regardless of whether they entered the country lawfully. *See*
8 U.S.C. § 1252(e) (1994). And after Congress passed the IIRIRA,
Congress still intended for these criminal penalties to apply to
noncitizens who failed to leave the country despite what we now
call removal orders, irrespective of whether the noncitizens first
entered lawfully.

In essence, all the IIRIRA did to the criminal-penalty provi-
sion was renumber and update it with terminology consistent with
the new removal regime. *Compare* 8 U.S.C. § 1252(e) (1994) *with* 8
U.S.C. § 1253(a)(1). For example, now a noncitizen who fails to
leave the country is subject to criminal penalties if he has a "final
order of removal" rather than a "final order of deportation." *Com-*
*pare* 8 U.S.C. § 1252(e) (1994) *with* 8 U.S.C. § 1253(a)(1).

But criminal penalties still attach to those noncitizens, in-
cluding unlawful immigrants, who faced final deportation orders
that pre-dated the IIRIRA's removals. That's because Congress
made clear that references to an "order of removal" in section 1253
include an "order of deportation" from the old system. *See* IIRIRA
§ 309(d)(2); 8 U.S.C. § 1253 note (References to Order of Removal
Deemed To Include Order of Exclusion and Deportation). It ap-
pears that when Congress created the removal system, it intended
to preserve criminal penalties for all who faced them before the
IIRIRA. *See Fourco Glass Co. v. Transmirra Prods. Corp.*, 353 U.S. 222,

227 (1957) ("[I]t will not be inferred that Congress, in revising and consolidating the laws, intended to change their effect, unless such intention is clearly expressed."); *United States v. Bamfield*, 328 F.3d 115, 118–20 (3d Cir. 2003) ("As this comparison of the former 8 U.S.C. § 1252(e) [1994] and the current 8 U.S.C. § 1253(a) demonstrates, the new 'failure to depart' offense is substantially similar to the previous version.").

To accomplish its goal, Congress limited the applicability of the definitions in section 1229a(e) to sections 1229a and 1229b, which govern only removals, their cancellations, and the adjustment of statuses. In those sections, it makes sense that the concept of "deportable" is linked to only admissible noncitizens. After all, as we've explained, even though the new removal system that the IIRIRA imposed covers both admitted and non-admitted noncitizens, it also changed our immigration system from location-based to status-based. But it did not change the criminal penalties that section 1253(a)(1) imposes. Even with the IIRIRA, Congress still wanted unlawful immigrants who were "deportable" under the old system and violated what were then called deportation orders (but are now called removal orders) to face penalties.[6] So the section 1229a(e)(2) definition does not apply to section 1253(a)(1).

---

[6] One of the thrusts of the IIRIRA was to combat "illegal immigration." EIG, *supra*, at 1. So we think it doubtful that Congress intended, as Doe suggests, to apply section 1253(a)(1) penalties to lawful entrants but not to "illegal immigrants." Indeed, Congress named the statute the "Illegal Immigration Reform and Immigrant Responsibility Act." *See Dubin v. United States*, 599 U.S. 110, 120-21 (2023) (acknowledging that the title of a statute is a useful tool to

22　　　　　　　Opinion of the Court　　　　　22-14307

Doe is not in court on removal proceedings. He is here for a criminal violation. So whether he would be considered "deportable" in removal proceedings is irrelevant to whether he violated section 1253(a)(1) in part by being a member of the class that section 1227(a)(1)(A) identifies.

Had Congress wanted to limit criminal penalties to "deportable" and "admitted" immigrants, "it could have easily said so." *See Ysleta Del Sur Pueblo*, 596 U.S. at 705 (rejecting an alternative reading of a statute that the Supreme Court concluded Congress could have easily adopted if it had wanted to). It could have used the language of section 1229a(e)(2)(B) or directly incorporated 1229a(e)(2)(B) into section 1253(a) by reference. Instead, Congress directed us to "the classes described in section 1227(a)." 8 U.S.C. § 1253(a)(1). And as we've noted, those classes are not limited to "admitted" noncitizens.

---

interpret ambiguous meaning). And when signing the IIRIRA into law, President Clinton stated the statute "strengthens the rule of law by cracking down on *illegal immigration . . . in the criminal justice system*—without punishing those living in the United States legally." Statement on Signing the Omnibus Consolidated Appropriations Act, 1997, 2 PUB. PAPERS 1729, 1731 (Sept. 30, 1996) (emphasis added). President Clinton also described the IIRIRA as "build[ing] on our progress of the last 3 years." *Id*. And just two years before Congress enacted the IIRIRA, Congress expanded the "classes" of immigrants subject to what are now section 1253(a)(1) penalties to include noncitizens who entered illegally or were otherwise excludable at the time of entry. Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, §130001(a), 108 Stat 1796 (1994).

Finally, Doe argues that if Congress had wanted section 1253(a)(1) to apply to noncitizens who were not admitted, it could have done so more explicitly. But the import of statutory silence "depends on context." *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 381 (2013). And as we've explained throughout this opinion, the context cannot sustain Doe's negative-implication argument.

## IV.　CONCLUSION

For these reasons, we agree with the district court's ruling that section 1253(a)(1) does not require lawful admission as a predicate to failure-to-depart criminal penalties. And the district court did not abuse its discretion by denying Doe's proposed jury instruction. Nor did it err when it denied Doe's motion for a judgment of acquittal.

**AFFIRMED.**