**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

### For the Eleventh Circuit

————————————

No. 24-10003

Non-Argument Calendar

————————————

CAMILO ANDRES ARISTIZABAL BERRIO,
YENNY VANESSA QUINTERO OLARTE,
VALERY NICOL ARISTIZABAL QUINTERO,
IAN CAMILO ARISTIZABAL QUINTERO,

*Petitioners,*

*versus*

U.S. ATTORNEY GENERAL,

*Respondent.*

————————————

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A220-231-002

————————————

Before JILL PRYOR, LUCK, and BRASHER, Circuit Judges.

PER CURIAM:

Camilo Andres Aristizabal Berrio, his wife, and two minor children petition for review of the Board of Immigration Appeals's decision affirming the denial of Berrio's asylum application. After careful review, we deny the petition.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Berrio is a native and citizen of Colombia. He came from a prominent family. His great uncle, in particular, was a successful businessman who was involved in local politics. In 1998, when Berrio was a child, the Revolutionary Armed Forces of Colombia—a radical communist guerilla warfare group known as FARC—held Berrio's uncle for ransom and later murdered him.

As an adult, Berrio became a physical education teacher. On multiple occasions, FARC members told Berrio he had to recruit his students to FARC and support the group financially. After each FARC encounter, he moved towns but never contacted the local police. During his final encounter with FARC members, they told him to recruit students or they would kill him and his wife and "take [his] children to the mountains." At that point, he left Colombia for the United States—where his mother and sister lived.

Berrio, his wife, and their two minor children entered the United States without inspection in July 2021. By August, the Department of Homeland Security sought to remove Berrio and his family and sent them a notice to appear before an immigration judge. Berrio appeared on behalf of himself and his family and conceded that they were subject to removal.

To avoid removal, Berrio applied for asylum, withholding of removal, and protection under the Convention Against Torture. His wife and children didn't file separate applications but were treated as "derivative beneficiaries" of Berrio's application. In his application, Berrio sought relief from removal because FARC persecuted him based on his "anti-FARC political opinion" and membership in a particular social group—"educator[s] in the area of physical education and sports in Colombia."

After an evidentiary hearing, the immigration judge denied Berrio's application for asylum, withholding of removal, and protection under the Convention. The immigration judge denied asylum because Berrio "failed to establish": (1) that "FARC targeted him" because of his "political opinion" and "membership in a particular social group"; (2) that his particular social group was sufficiently "defined with particularity"; (3) that "the harm described" rose "to the level of persecution"; (4) "that the Government of Colombia was unable or unwilling to help him"; and (5) that he had "a well-founded fear of future persecution." The immigration judge denied withholding of removal because Berrio failed to establish that "it [wa]s more likely than not" that he "will suffer persecution on account of" his political opinion or membership in a particular social group. And the immigration judge denied relief under the Convention because the evidence showed threatened violence, which wasn't "torture."

Berrio only appealed the denial of asylum to the board. He argued that the immigration judge erred in denying asylum

because Berrio provided sufficient evidence to establish that FARC targeted him because of his anti-FARC political opinion and membership in a particular social group. And, for the first time on appeal, Berrio argued that he was a part of another particular social group—"family members of his great uncle who had been persecuted numerous times" by FARC.

The board affirmed the immigration judge's decision. First, the board declined to review the new argument that FARC targeted Berrio based on his connection to his great uncle because he failed to raise that argument to the immigration judge. Next, the board explained that Berrio failed to challenge, and therefore waived any challenge to, the immigration judge's finding that Berrio's initial particular social group—"educator[s] in the area of physical education in Colombia"—wasn't sufficiently defined with particularity and the finding that Berrio failed to establish the Colombian government was unable or unwilling to protect him from FARC. By waiving those challenges, the board concluded that the immigration judge's decision must stand.

Berrio (on behalf of himself and his family) now petitions us to review the board's decision.

## STANDARD OF REVIEW

We review the board's legal conclusions de novo. *Zhu v. U.S. Att'y Gen.*, 703 F.3d 1303, 1307 (11th Cir. 2013) (citing *Poveda v. U.S. Att'y Gen.*, 692 F.3d 1168, 1172 (11th Cir. 2012)). And we review the board's waiver rulings for an abuse of discretion. *Lapaix*

*v. U.S. Att'y Gen.*, 605 F.3d 1138, 1144–45 (11th Cir. 2010) (citation omitted).

## DISCUSSION

In his petition, Berrio argues that the board erred because there was sufficient evidence supporting his claim that FARC targeted him based on his political opinion and membership in a particular social group. But critically, Berrio does not challenge the board's conclusion that he waived his appeal of the immigration judge's finding that Berrio failed to establish the Colombian government was unable or unwilling to protect him. That dooms his petition.

Where, as here, a noncitizen seeks asylum based on persecution by private actors, the noncitizen "must prove that his home country is unable or unwilling to protect him." *Ayala v. U.S. Att'y Gen.*, 605 F.3d 941, 950 (11th Cir. 2010) (citing *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1257 (11th Cir. 1257)). That's required because "[t]he statutes governing asylum . . . protect . . . against persecution by non-governmental groups that the government cannot control." *Ruiz*, 44 F.3d at 1257.

Further, a noncitizen waives the right to appeal an immigration judge's finding by failing to raise a challenge with the board. *See Lapaix*, 605 F.3d at 1145. Thus, the board "has discretion to summarily dismiss claims where the record clearly indicates that the [noncitizen] has waived [his] right to appeal." *Id.* at 1144–45. Similarly, a noncitizen forfeits the right to challenge a board ruling by failing to prominently present a challenge to the ruling in his

petition for review to us.  *Ruga v. U.S. Att'y Gen.*, 757 F.3d 1193, 1196 (11th Cir. 2014); *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1352 (11th Cir. 2009).

Here, Berrio's petition does not mention the board's conclusion that he waived his appeal of the immigration judge's finding that Berrio failed to establish the Colombian government was "unable or unwilling to protect him."  *See Ayala*, 605 F.3d at 950.  So, he forfeited any challenge to the board's waiver ruling.  *See Ruga*, 757 F.3d at 1196; *Kazemzadeh*, 577 F.3d at 1352.  And even if he didn't, the board did not abuse its discretion in coming to that conclusion because Berrio failed to challenge the immigration judge's finding in their initial brief to the board.  *See Lapaix*, 605 F.3d at 1145.  Thus, the board's decision affirming the denial of Berrio's application for asylum stands.

**PETITION DENIED.**